FREENY *v.* HALL.

1. If one on being inquired of by another who is about to purchase, before the maturity of the crop, a negotiable note not yet due, purporting on its face to be given for rent, admits the execution of the note by him, and that it was in fact given for rent, and the person making the inquiry acts upon this information in purchasing the note, the maker may be estopped to deny either the execution of the note or its consideration, in a subsequent proceeding against him by the purchaser to enforce by distress warrant the special lien on crops given by the act of September 27th, 1883, the transfer of the note being by written assignment of the payee as provided for in that statute. But there will be no estoppel unless it is made to appear, either directly or from the attendant circumstances, that at the time of answering the inquiry the person inquired of either knew or had good reason to believe that a purchase of the note was in contemplation, and that the inquiry was not made out of mere curiosity or in the interest of the payee or of somebody already having or claiming a right in the subject-matter. Whether or not the answer was made with notice of the object of the inquiry, is a question of fact for determination by the jury.

2. An affidavit to obtain a distress warrant to enforce a special lien on crops for rent in behalf of the transferee of a rent contract, is amendable; but to render the affidavit sufficient when amended, it should show all the facts necessary to raise the special lien provided for in the act of 1883 above referred to. Let any necessary amendment be made before the next trial.

April 23, 1894. Argued at the last term.

Distress warrant. Before Judge FISH. Lee superior court. September term, 1892.

FORT & WATSON, for plaintiff in error.
WOOTEN & WOOTEN, *contra.*

SIMMONS, Justice.

1. Hall claimed that Hooks offered to negotiate to him a note-purporting to be signed by one Freeny, payable to Hooks' wife, for rent, and that he declined to purchase the note until he could see Freeny and ascertain if he had signed it; that shortly thereafter he saw Freeny and asked him if he had signed the note, and

Freeny replied that he had; that he asked Freeny if it was given for rent, and he replied that it was; and that he (Hall) thereupon purchased the note from Hooks, taking a written assignment of it.   The note falling due, Hall, as transferee, had a distress warrant issued for the rent as allowed by the act approved Sept. 27, 1883. (Acts, p. 109.)   Freeny made a counter-affidavit denying that the sum distrained for was due.   On the trial of the case Hall testified, in substance, as above set out. Freeny denied signing the note, or that he had ever had any conversation with Hall about it.   Upon this state of facts the judge charged the jury, in substance, that if Freeny stated to Hall that he had rented land from Hooks and had given that note for the rent of the land, and had signed it, and upon that admission the plaintiff traded for the note and Hooks assigned it to him, the defendant would be estopped from denying the admission.

While this charge is sound as to everything requisite except the state of mind of Freeny, we think the court should have added that Freeny would not be estopped unless he knew or had reason to believe that Hall intended to purchase the note.   It is not every assertion or representation that will work an estoppel.   A man may make an untrue assertion or representation to another because he may deem the question asked him impertinent, and in that case he would not be estopped; but if he knew that the person making the inquiry intended to contract on the faith of the information given, and he then made a false representation upon which the other person acted, this would amount to an estoppel. In Bigelow on Estoppel, p. 628, it is said:  " The representation must have been made with the intention, either actual or reasonably to be inferred by the person to whom it was made, that it should be acted upon.   In general, where there is nothing reasonably indicating

that the representation was intended to be acted upon as a statement of the truth, or that it was tantamount to a promise or agreement that the declaration made is true so as to amount to an undertaking to respond in case of its falsity, the party making it is not estopped from proving the truth." It is further said (p. 636), "Where an inquiry has been made which has resulted in the representation in question, it is necessary that the purport of the inquiry should be made clear; if that be not the case, there cannot be said to be any intention, whether actual or presumptive, that the representation should be acted upon." See also Andrews *v.* Lyon, 11 Allen, 349; Hefner *v.* Vandolah, 57 Ill. 520. In the case of *Tompkins* v. *Philips*, 12 *Ga.* 52, relied on by counsel for the defendant in error, it appears that the defendant intentionally induced the plaintiff to act, by his representations. The case of *Reedy* v. *Brunner*, 60 *Ga.* 107, is very much like the one now under consideration. There the broad doctrine as announced by the trial judge in this case was laid down by the court, but there was nothing in the record to call the attention of the court to the distinction which we lay down in this case, the exception being to the whole charge of the court. If Hall had told Freeny of the purpose of his inquiry, or if Freeny could have inferred that Hall contemplated purchasing the note and would act upon his representations, and he made the replies which Hall claimed he made, he would be estopped from denying the truth of those representations, if Hall acted upon them by purchasing the note. But if Hall said nothing as to the purpose of his inquiry, and Freeny had no reason to infer that a purchase of the note was in contemplation, he would not be estopped. Whether or not the answers of Freeny were made with notice of the object of the inquiry is a question of fact for determination by the jury.

2. The affidavit made by Hall to enforce a special lien on the crops of Freeny for the rent was amendable, under the act of 1887 and the act amendatory thereof, but when amended it should show all the facts necessary to raise a special lien as provided for in the act of 1883 above referred to. These amendments can be made before the next trial.          *Judgment reversed.*