### PALMER *v.* McNATT.

1. Merely stating to a person that another has signed his name to "a bond" is not of itself sufficient to charge him with notice as to the nature and character of such bond; nor, in the absence of any further information, or of any reason for believing that a third person may be injured by acting upon the belief that such signing was duly authorized, is the person first referred to bound to make an investigation of the facts and repudiate the signature or take other steps to prevent the happening of such injury.

2. Accordingly, where a bond was executed for the purpose of dissolving a garnishment, one whose name was signed thereto as a surety without his knowledge or consent, was not bound by the bond merely because, after being informed that his name had been signed to a bond of some description, but concerning which no further information as to parties or otherwise was given him, he took no steps to deny the genuineness of the signature or have the same cancelled. If on the other hand he really knew the nature of the bond and the purpose for which it was given, and did not, after opportunity to do so, repudiate the signature before the money held up by the garnishment was paid to the principal on the bond, he would, under these circumstances be estopped from denying that his signature was authorized, and would be held to have ratified the signing of his name to the bond.

October 21, 1895.

Affidavit of illegality. Before Judge Smith. Montgomery superior court. January 28, 1895.

*J. H. Martin* and *Isaiah Beasley,* for plaintiff in error.
*D. M. Roberts,* contra.

SIMMONS, Chief Justice.

In a suit by McNatt against Joseph Palmer, summons of garnishment was served upon one Peterson, who was indebted to Palmer; and in order to dissolve the garnishment Palmer executed a bond to which, besides signing his own name as principal, he signed that of J. E. Palmer as security, stating to the clerk of the superior court, in whose presence the bond was signed, that he had authority to do so. The clerk approved the bond, and the amount due by the garnishee was paid over to Joseph Palmer. The case resulted in favor of the plaintiff and judgment was entered upon the bond, and on this judgment execution was issued against Joseph Palmer as principal and J. E. Palmer as security. The execution was levied upon property of J. E. Palmer, who filed an affidavit of illegality, alleging that he had never signed the bond, had never authorized any one to do so for him, had never ratified the doing of the same, had no notice that it was done until long after it was done and the money obtained from Peterson by Joseph Palmer, had never had his day in court, and was in no way liable upon the bond. Upon the trial of the issue formed by this affidavit, he testified that he did not authorize the signing of his name to the bond, and did not know his name was signed to it until after it was done; that he had told Joseph Palmer, who was his brother, never to sign his name to any papers, and that if he did, he (the witness) would not be bound by it; that he had no notice that his name had been signed to this particular bond until so informed by McNatt, the plaintiff; whereupon he informed McNatt that it was a forgery. He had been informed by his brother that his name had been signed to a bond, but did not know at that time what kind of bond it was, and did not know who had it. His brother simply said, "I had to use your name on a bond," to which he replied, "What did you do that for? Have I not often told you never to use my name on a bond; that I could not make myself liable for your debts?"

Joseph Palmer testified, "I did not tell him (J. E. Palmer) what the bond was about, nor who had possession of it." There was a verdict for the plaintiff, and a motion for a new trial was made by J. E. Palmer, which was overruled, and he excepted. The motion contains the general grounds that the verdict is contrary to law and to the evidence, and it is further complained that the court erred in charging the jury as follows: "I charge you that if the defendant immediately, or soon after his name had been signed to the bond, received notice of it, it was his duty, if he objected to the use of his name in that connection, to inform the parties of his objection and unwillingness to have his name signed as security on the bond. And I charge you that if he received notice that his name had been signed to a bond, and had an opportunity and made no objection, his silence amounted to a ratification, and he is bound notwithstanding the bond was signed without his consent. I charge you that it was his duty to follow up the matter and investigate, and he was bound by all to which that investigation would lead. I charge you that the notice contemplated by the law in such cases is any notice that would be calculated to put a person on inquiry, that would lead him to investigate and find out if his name had been signed to the bond."

It is a fundamental principle of the law of estoppel, that in order to create an estoppel by conduct, the conduct must have operated to the injury of the person claiming the benefit of the estoppel. If it did not mislead him and cause him to change his position for the worse, or cause him to omit doing something which he might otherwise have done to protect himself from loss, no estoppel would result in his favor. One who acts upon the statement of another who claims authority to represent a third person, must at his peril ascertain whether such authority exists or not; and if he makes no inquiry of the alleged principal, and his action in the matter has not been influenced by any misleading act or representation on the part of the sup-

posed principal, or by the silence of the latter where there was an opportunity and a duty to speak, it is clear that in the absence of an affirmative ratification, he would have no right to hold such third person bound. Accordingly, in the present case, if the signing of the defendant's name to the bond was unauthorized, and the bond was acted upon and the money paid over before he learned of the transaction, and he had done nothing before the money was paid over from which the other parties concerned would have a right to infer that the person who signed his name had authority to do so, his silence subsequently could not be held to amount to a ratification; certainly not, if there was no unreasonable delay on his part in repudiating the act after it came to his knowledge, and if the plaintiff was in no worse position when he learned of the repudiation than he was when it was first within the power of the defendant to give the information. The only effect which could be given to his silence, in the absence of anything going to show that injury resulted from it, would be, that if long continued, it might, in connection with other facts, be taken into consideration by the jury as a circumstance tending to show that there was in fact a ratification; but it could not have even this effect if the unauthorized act was the signing of an instrument under seal. See *McCalla v. American Freehold etc. Co.*, 90 *Ga.* 113, where it was held that unless the ratification of a forged deed be made in writing and under seal, it will be ineffectual in favor of any person who has not acted upon the ratification in a way to make the doctrine of estoppel applicable for his protection; and that a ratification by mere silence, after one has parted with his money on the faith of such a deed, will not render the deed operative in favor of the person who has thus acted. A prominent case on this subject is that of M'Kenzie *v.* British Linen Company (House of Lords), L. R., 6 App. Cas. 82, where it was held, that although a person knows that a bank is relying upon his forged

signature to a bill, there is no principle on which his mere silence for a fortnight from the time when he first knew of the forgery, during which the position of the bank was in no way altered or prejudiced, can be held to be an admission or adoption of liability, or an estoppel. See also Zell's Appeal, 103 Penn. State Rep. 103, where it was held that the mere omission by one whose signature is forged to an instrument for the payment of money, to seek the holder and proclaim the forgery immediately on his discovering it, is not such acquiescence as will estop him from subsequently setting up the forgery as a defense to an action on the instrument, where it is not shown that the holder suffered any detriment by reason of such omission. And see Bigelow on Estoppel, 638 *et seq.* The court below, in the instruction above quoted, left out of view the principle here stated, and charged broadly and without qualification that silence after knowledge of the unauthorized act, and after an opportunity to speak, would amount to a ratification.

Even if information as to the unauthorized act came to the defendant before the money was paid over, still if all that was said to him and all that he knew about the matter was that his brother had signed his name to "a bond," it is clear that he was not, as a matter of law, under any obligation to go out of his way for the protection of others. As we have already said, it is incumbent upon one who deals with a person claiming authority to act for a third person, to ascertain whether such authority really exists or not; and a person who is informed that an unauthorized person has claimed authority to act for him, and who has done nothing to warrant the belief that the representation is true, has a right to assume that others will not trust to the representation, but will make due inquiry for their own protection. It is their place to come to him, not his to go to them. His omission to speak would not amount to an estoppel unless he was placed in a situation in which others

might reasonably interpret his silence as an admission that the act was authorized; and even then he would not be estopped unless he knew or had good reason to believe that others were about to act upon the faith of the supposed authority. Indeed, this court has held, that although a promissory note to which a person's name purports to be signed is exhibited to him, and he goes so far as to acknowledge its genuineness to the person who exhibits it to him, and who afterwards upon the faith of this admission purchases it from the payee, yet no estoppel will result in the absence of anything going to show that the person who made the admission knew or had good reason to believe that a purchase of the note was in contemplation. (*Freeny* v. *Hall*, 93 *Ga.* 706.) In Bigelow on Estoppel, p. 195, it is said: "It is not enough to raise an estoppel, that there was an opportunity to speak which was not embraced; there must have been an imperative duty to speak. Nor is any duty generated by the mere fact that a man is aware that some one *may* act to his prejudice if the true state of things is not disclosed. To use an apt illustration of one of the judges, a man may become apprised of the fact that his name has been forged to a negotiable instrument, and so become aware that some one may be led to purchase the paper by supposing the signature to be genuine, and yet he is not bound to proceed against the forger or to take any steps to protect the interests of others whose claims he may know nothing of. So long as he is not brought into contact with the person about to act, and does not know who that person may be, he is under no obligation to seek him out, or to stop a transaction which is not due to his own conduct as the natural and obvious result of it. If the party is present at the time of the transaction, it may be necessary for him to speak if speaking would probably prevent the action about to be taken; if absent, his silence (or other conduct) must at least be of a nature to have an obvious and direct tendency to *cause* the omission or the step taken. Only thus can a duty to speak arise."

According to the charge of the court in this case, as applied to the evidence, if a person signs the name of another to a bond without authority, and the latter learns of it, although he knows nothing of the nature and character of the bond, the purpose for which it was given, nor to whom it was given, nor anything further than was conveyed by the statement that a certain person had signed his name to "a bond," and although the signer was not in any sense his agent and had never been held out as having authority to act for him in such a transaction, he is nevertheless, as a matter of law, bound to investigate the matter, and is accordingly chargeable with knowledge of all the facts to which investigation would lead; and if he does not go to the parties concerned and repudiate the unauthorized act, must be held to have ratified it. This was clearly wrong. *Judgment reversed.*