## MONTFORT v. AMERICUS GUANO COMPANY.

The renewal of a promissory note given for the purchase-price of fertilizers, in which it was recited that the fertilizer "has the guaranteed analysis on each sack as required by law," and that the maker had "purchased on his own judgment, waiving all guarantee as to its effect upon crops," at a time when the maker had full knowledge that his crops had failed, without making inquiry as to whether the guaranteed analysis corresponded with the official analysis, will preclude him from setting up as a defense to the note that the fertilizer was of no benefit to the crops on which it was used.

Submitted May 10, — Decided June 14, 1899.

Complaint. Before Judge Butt. Marion superior court. April term, 1898.

*Simeon Blue,* by *J. A. Noyes,* for plaintiff.

Cobb, J. The Americus Guano Company brought suit against Israel Montfort upon a promissory note dated January 13, 1897, given for the purchase-price of certain fertilizers. In the note the maker stipulated that the note was given for the purchase-price of a certain named fertilizer, "which has the guaranteed analysis on each sack, as required by law, and which I have purchased on 'my judgment, waiving all guarantee as to its effects upon crops." The defendant pleaded that the consideration of the note had failed, in that the fertilizer was worthless and not reasonably suited to the use for which it was bought, and of no benefit to his crops, and that the fertilizer did not substantially contain the ingredients which the plaintiff guaranteed it to contain. At the trial the plaintiff introduced in evidence the note sued on, and closed. The defendant offered, and it was admitted without objection, a certified copy of the analysis guaranteed and actual, for the seasons of 1895, 1896, and 1897, of the brand of fertilizer for the purchase of which the note sued on was given, from the records of file in the office of the commissioner of agriculture, under seal of the department. It appears from this that the analyses of this fertilizer for the seasons of 1896 and 1897 by the State chemist showed that the fertilizer substantially contained the ingredients guaranteed, except as to potash, which showed that it was guaranteed to contain from .1 to 2 per cent.

of this ingredient, while the actual analysis of the State chemist showed that the fertilizer only contained .89 per cent. The defendant testified that the note sued on was a renewal of one executed by him during the year 1896 for the fertilizer mentioned therein, bought in that year. He then proposed to testify that he did not know of any analysis made of the fertilizer till after the execution of the note sued on, and that the fertilizer was of no benefit to his crops. The court refused to allow this testimony, on the ground that any right defendant may have had on account of the defect in the fertilizer was waived by the giving of the renewal note. To this ruling the defendant excepted. The court then directed the jury to return a verdict in favor of the plaintiff for the amount sued for, but it seems that no exception is or was taken to this action of the court. The only question presented for our consideration is whether or not the court erred in refusing to allow the defendant to testify as above set out.

We do not think there was any error in the court's ruling. A whole season had passed away before the renewal note was given; and if the fertilizer did not benefit the crops of the defendant, he must have known at the time he gave the renewal note that this was true. While the defendant testified that he did not know that the fertilizer did not come up to the guaranteed analysis, he does not show that he had done anything toward obtaining information on the subject. The failure of his crops indicated that the fertilizer was not beneficial, and this was enough to have awakened inquiry as to whether the guaranteed analysis on the sacks was correct. The official analysis of file in the office of the commissioner of agriculture was within easy reach. See Political Code, §§ 1551 et seq. A simple inquiry at this public office would have brought the desired information. Having renewed the note at a time when he had full knowledge that his crop was a failure and without taking any steps to ascertain whether the guaranteed analysis corresponded with the official analysis, we do not think that he should be allowed now to set up as a defense facts which he either knew or could by the exercise of the slightest diligence have known when the note was renewed.

He could have obtained the information before renewing the note, just as he did obtain it before going to trial. The law charged him with notice of where the information could be had, and it was so easily accessible that it would not be otherwise than proper to treat the case in the same way as it would be dealt with if he had actual knowledge. While not within the letter of the decision in *American Car Company* v. *Atlanta Street Railway Company*, 100 *Ga.* 254, and the cases there cited, the case certainly falls within the principle there ruled. The whole defense is such a palpable afterthought that it should not be allowed to be successful in defeating a liability once solemnly recognized by renewing the note, when the circumstances were such as to, in effect, charge the defendant with actual knowledge of the very defense he now sets up. See, in this connection, *Lunsford* v. *Malsby*, 101 *Ga.* 39.

*Judgment affirmed. All the Justices concurring.*