# CASES

### DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

#### AT THE

## MARCH TERM, 1917.

---

### 8174. BANK OF LUMPKIN *v.* BANK OF STEWART COUNTY.

1. An agreement between two creditors of an insolvent estate to bid upon, and, if necessary, to buy and to own in equal proportion the property of the estate when offered for sale by the administrators, for the purpose of causing the property to bring its fair market value, will not estop one of the creditors from claiming a prior lien upon certain property of the estate expressly excluded from the terms of the agreement; and this is true although the creditor asserting the lien failed to advise the other creditor of the existence of his lien, and although the creditor claiming the lien knew that the other creditors understood that all creditors of the estate were to share ratably in the distribution of the assets of the estate, and failed to make known the existence of the lien on the specific property excepted from the terms of the agreement.

2. Estoppels are not favored, and mere silence will not work an estoppel unless the circumstances are such as not only to afford an opportunity to speak, but also to create an apparent or actual duty to speak. It is not the office of estoppel to work a positive gain to another. Its exclusive office is to protect him from injury which, but for the doctrine, he must necessarily suffer. Hence, he who invokes an estoppel must have changed his position, to his injury, upon the strength of the facts upon which the claim of estoppel is based.

3. The doctrine of estoppel by silence, or standing by, was not applicable to the facts of this case. Under the facts in the record, none of the instructions of the court were erroneous for any reason assigned, and the court did not err in overruling the motion for new trial.

DECIDED MAY 3, 1917. REHEARING DENIED JUNE 15, 1917.

Appeal; from Stewart superior court—Judge Littlejohn. October 20, 1915.

The administrators of the estate of John T. Patterson filed a petition in the court of ordinary of Stewart county, in which

1

they alleged: that the assets of the estate had been reduced to cash; that the total assets amounted to $16,010.84; that the total disbursements theretofore made amounted to $12,522.33; that the unpaid creditors of the estate were as follows: Bank of Stewart County, $3,811.66; Bank of Lumpkin, $2,120.51; Farmers' State Bank, $273.91; W. J. Sykes & Co., $14.50; R. M. Rose & Company, $10.75; that the total amounts yet due said named creditors were $6,231.33; that the administrators had only enough to pay about 56 cents on the dollar of the claims still outstanding against said estate; that they were notified that the Bank of Stewart County claimed a prior lien upon 23 shares of stock in the Bank of Stewart County, which stock had been sold by the administrators for $1,725, and the proceeds of which were then held by the administrators. The administrators desired direction from the court of ordinary, and asked that the creditors named be required to show cause why they should not make a disbursement of the funds on hand.

The Bank of Stewart County intervened and, among other things, alleged: that John T. Patterson, at the time of his death, was indebted to it in the sum stated in the petition filed by the administrators; that at the time of his death he was the owner of 23 shares of the capital stock of the Bank of Stewart County, which stock was sold by the administrators of said estate, the intervenor becoming the purchaser thereof at the price of $75 per share, and that the intervenor claimed a lien on said stock by virtue of a by-law lien enacted by the board of directors of said bank; that the indebtedness of John T. Patterson arose after the creation of such lien, and was agreed to and acquiesced in by the said Patterson, who was, at the time of the creation of said by-law lien, a member of the board of directors of said bank; that the lien of the bank under its by-laws, attached to the 23 shares owned by Patterson at the time of his death, and that its lien now attached to the proceeds of the sale of said stock in the hands of the administrators. The intervenor prayed that the administrators be directed to pay over to it the proceeds of the sale of said stock.

The Bank of Lumpkin, in response to the petition of said administrators, averred that the Bank of Stewart County was not entitled to any lien on the bank stock described in its intervention, nor to any priority of payment from the funds of said estate;

including the funds derived from the sale of the bank stock, for the reason that said lien had been waived by said Bank of Stewart County, and said bank was estopped from now claiming any lien or priority against said stock or the proceeds thereof in the hands of the administrators; that said waiver and estoppel arose by reason of the following facts: that John T. Patterson was indebted to the Bank of Stewart County and to the Bank of Lumpkin in the amounts stated in the petition filed by the administrators; that the indebtedness to each of said banks consisted of an overdraft in the account of said Patterson with each of said banks; that said banks were the largest creditors of the estate of said Patterson, and constituted practically all of the unpaid creditors of said estate; that prior to the sale of the property belonging to the estate of Patterson, the Bank of Stewart County and the Bank of Lumpkin, by their agents and officers, entered into an agreement to make the property, at the sale by the administrators, bring its fair market value; that the banks agreed to bid on the property when exposed to sale by the administrators for the purpose aforesaid, and further agreed that if any of the property of the estate should be knocked off to either the Bank of Stewart County or the Bank of Lumpkin, the said banks would each appropriate money with which to pay the purchase-price of said property; that Patterson's stock in the Bank of Stewart County was expressly excepted from this agreement; that the Bank of Stewart County expressly agreed to buy this stock at $75 per share, the same being the value thereof; that, excepting the said bank stock belonging to the estate, which was to be purchased by the Bank of Stewart County, the amounts due by the estate to each of said banks was approximately equal, and said banks were to bid upon the property belonging to the estate for the purpose aforesaid, and were each to pay one half of the purchase price of any property actually bid off by the banks or either of them; that it was agreed between the agents of the banks that the assets of said estate were to be distributed by the administrators to the banks and other creditors of the estate in proportion to their respective claims against the estate; that the Bank of Stewart County did not disclose to the Bank of Lumpkin that it had or claimed a lien against the bank stock belonging to the estate of said Patterson, until after the sale by the administrators; that said Bank of Stewart County carefully and designedly concealed its

claim of lien against said stock, and permitted the agreement to be made as aforesaid; that said Bank of Stewart County knew and was advised of the understanding and construction placed upon the agreement by the Bank of Lumpkin, and that it did not dissent or object to such understanding and construction until after the sale of the property by the administrators. Wherefore the Bank of Lumpkin, expressly admitting that a lien originally existed in favor of the Bank of Stewart County against Patterson's stock in the latter bank, claimed that the Bank of Stewart County had waived its lien, and had, by reason of the facts aforesaid, estopped itself from now claiming a lien against the proceeds arising from the sale of said stock.

On the trial of the issue before the court of ordinary the lien claimed by the Bank of Stewart County against the proceeds arising from the sale of said bank stock was recognized, and the cause was appealed to the superior court. Upon the trial of the cause in the superior court it appeared that John T. Patterson, at the time of his death, was the owner of 17 shares of the capital stock of the Bank of Stewart County, and that at the time of his death he was indebted to that bank by overdraft in the sum of $3,811.66. The Bank of Stewart County, through its board of directors, passed a resolution providing and creating a by-law lien on any of its capital stock for any indebtedness due the bank by any of its shareholders, which indebtedness would be a lien upon the shares in said bank owned by any debtor shareholder. This by-law was adopted prior to the creation of the indebtedness of Patterson to the bank, and he was a director and shareholder in that bank at the time of the creation of the by-law lien referred to. At the time of his death he was indebted to the Bank of Lumpkin by overdraft in the sum of $2,120.51. The administrators of his estate obtained an order to sell all the property belonging to the estate, including the 17 shares of the capital stock of the Bank of Stewart County. On the day preceding the day of the sale of the property of the estate the Bank of Stewart County and the Bank of Lumpkin, by certain agents and officers, met in convention for the purpose of agreeing upon plans to make the property bring its fair value at the sale, and it was agreed that in order to do this the banks would have to bid upon the property, and would probably have to become the purchasers of some or of all of the property. It

was then agreed that the banks would bid upon the property, and that if any of the property should be knocked off to the banks, the banks would own in common the property thus knocked off to them. It was suggested that since the Bank of Stewart County had the larger claim against the estate, the purchase price of any property bid in by the banks should be paid in proportion to the claims of the two banks. The Bank of Stewart County did not consent to this, but did agree to buy on its own account the 17 shares of bank stock owned by Patterson in the Bank of Stewart County, and further agreed to pay $75 per share for this stock,— its fair value. The agreement, as finally perfected, was as follows: The Bank of Stewart County should buy the bank stock at $75 per share, and the two banks should then bid upon and, if necessary, buy the other property belonging to the estate. If any of this property should be purchased by the banks, each bank was to pay one half of the purchase price thereof. The Bank of Stewart County admitted this to be the agreement, but denied the contention made by the Bank of Lumpkin that the funds of the estate in the hands of the administrators, to be derived from the sale of the property belonging to the estate, should be prorated upon the respective claims of the banks, and the claims of other creditors of the estate. It was shown that there was some discussion concerning the final settlement of the estate and the application of the funds to the unpaid claims against the estate. It was admitted by the Bank of Stewart County that in the negotiations leading up to the agreement no mention of its lien was made. It did not disclose its claim of lien, and did not notify the Bank of Lumpkin that it expected to insist upon its lien so far as the proceeds of the sale of the bank stock were concerned. The evidence further disclosed that the Bank of Stewart County did pay the price of $75 per share for the said 17 shares of Patterson's stock in the Bank of Stewart County; that two parcels of real estate were bid in by the two banks, but neither of the banks in fact paid any money to the administrators. Why the administrators did not collect the money from the banks does not clearly appear. The jury in the superior court found in favor of the lien claimed by the Bank of Stewart County, and the Bank of Lumpkin excepts to the overruling of its motion for new trial.

*R. S. Wimberly* and *T. T. James,* for plaintiff in error.

*G. Y. Harrell,* contra.

GEORGE, J. (After stating the foregoing facts.)   1. The foregoing statement discloses substantially the nature of this controversy and the material facts developed upon the trial. It was admitted by the Bank of Lumpkin, the plaintiff in error, that the Bank of Stewart County had a lien on the bank stock owned by Patterson at the time of his death, which stock was subsequently sold by his administrators. The by-law of the Bank of Stewart County creating such lien was offered in evidence. This lien was valid and binding against the bank stock, and against the proceeds thereof in the hands of the administrators. See *Owens* v. *Atlanta Trust & Banking Co.,* 122 *Ga.* 521 (50 S. E. 379).

2. The question made by the facts in this case is whether there was an actual contract between the parties to this cause by which the lien of the Bank of Stewart County against the bank stock was waived, or whether its conduct estopped it from asserting its lien. It is insisted by the plaintiff in error that the Bank of Stewart County waived its lien against the stock. This was entirely a question of fact. The evidence was in some respects in conflict, but the verdict of the jury settled that issue. The excerpts quoted from the charge of the court, and assigned here as erroneous, did not affect the jury's verdict. The evidence offered by the plaintiff in error and excluded by the court could not have produced a different verdict. While several exceptions are made to the charge of the court, all of these exceptions are to the same effect, and complain that the court in the charge withdrew from the jury any consideration of the theory of estoppel pleaded by the plaintiff in error. We have examined the charge of the court in this case with some care. The view taken by the trial court was that the doctrine of estoppel did not apply in this case, and we think this view was correct. We call attention to the material facts: The banks agreed to attend the administrators' sale and bid on the property belonging to the estate of Patterson; this agreement was for the sole purpose of making the property of the estate bring its fair value. The agreement to submit a joint bid upon the property, or to jointly buy the property, expressly excepted the bank stock. The Bank of Stewart County alone was to bid upon this stock, and the amount of the bid to be submitted was expressly fixed by agreement. The two banks were to become joint owners and equally interested in any property bought at the sale,

except the bank stock. It was never contemplated that they would become so interested in the bank stock. The Bank of Stewart County was under no obligation to make known to the Bank of Lumpkin any claim of lien held by it on the bank stock. Not only was the Bank of Stewart County to buy the bank stock upon its own account, but the bid to be made by the Bank of Stewart County was fixed, and no possible harm could result to the Bank of Lumpkin by its failure to disclose its lien against this stock. The Bank of Stewart County did not claim a lien against any of the real estate bought by the banks jointly. The doctrine of estoppel by silence proceeds upon the ground that he who is silent as to his alleged rights when he ought in good faith to speak shall not be heard to speak when he ought to be silent. Both banks were equally interested in seeing that the property of Patterson's estate brought its fair market value. They were especially so equally interested after the Bank of Stewart County had agreed to buy the bank stock, thereby reducing its overdraft to an amount practically equal to the overdraft of the Bank of Lumpkin. It concealed no lien against any property on which the banks jointly agreed to bid. It was not silent in any respect concerning the real subject-matter of the agreement. The status of the respective banks was in no wise affected either by the making of the agreement or in the execution of the agreement in the manner in which it was executed. It is insisted that if the banks agreed to bid upon the property of the estate in order to raise a fund in which they should each proportionately share, the Bank of Stewart County is estopped from asserting a lien on a part of this property or the proceeds of the sale thereof. It will be observed that in so far as the banks became joint bidders, or in so far as it was possible for them to become joint owners of any of the property belonging to the estate, the banks will share proportionately in the distribution of the assets. In order for estoppel to arise in this case, the agreement must have contemplated, and the facts must have shown, that the banks agreed to buy jointly and own in equal shares not only the lands belonging to the estate of Patterson, but the 17 shares of bank stock as well. The agreement actually made between the parties was that the two banks would become joint bidders and, if necessary, would pay for and own in equal shares the remainder of the property belonging to the estate of Patterson, on condition

that the Bank of Stewart County would buy the 17 shares of stock at a fixed value. The two banks, by the agreement, were never to become interested in the purchase of the bank stock. A person is held to a representation made or position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has in good faith relied thereon. "The doctrine of estoppel in pais is predicated upon a change of position to the hurt of one of the parties acting on the representations or conduct of the other." *Lynch* v. *Poole,* 138 *Ga.* 303, 305 (75 S. E. 158). Compare *Palmer* v. *McNatt,* 97 *Ga.* 435, 437 (25 S. E. 406). According to Lord Coke, an estoppel is where a man is concluded by his own act or acceptance to say the truth. It is not the office of estoppel to work a positive gain to another. Its exclusive function is to protect him from injury which, but for the doctrine, he must necessarily suffer. It is the final element in the doctrine of estoppel that the party who invokes the estoppel must have changed his position, to his injury, upon the strength of the facts upon which the estoppel is predicated. Mere silence will not work an estoppel. The "standing by" must be under such circumstances as not only to afford an opportunity to speak, but also to create a real or apparent duty to speak. So-called constructive fraud is the basis of an estoppel by silence. We fully agree with the view of the able and careful trial judge that the doctrine of estoppel was entirely inapplicable under the facts of this case. In this view of the case it is unnecessary to deal with the further assignments of error made in the record. The judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Wade, C. J., and Bloodworth, J., concur.*