**ROANOKE CITY MILLS, Inc.**
v.
**WHELCHEL.**
No. 14291.

United States Court of Appeals
Fifth Circuit.

Nov. 10, 1953.

Rehearing Denied Jan. 5, 1954.

Kenyon, Kenyon & Gunter, W. B. Gunter, E. D. Kenyon and A. R. Kenyon, Gainesville, Ga., for appellant.

R. Wilson Smith, Jr., and B. F. Whelchel, Gainesville, Ga., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Roanoke City Mills sued Wade H. Whelchel for $52,189.62 for chicken feed sold him on open account. The defendant moved for a more definite statement and plaintiff's response disclosed that plaintiff between May 12, 1948 and June 18, 1951 sold and delivered to the defendant chicken feed for an aggregate sale price of $173,834.98, upon which the defendant had paid $121,645.36 leaving a balance due and unpaid of $52,189.62.

At a pre-trial conference, counsel for the respective parties entered into a stipulation defining the issues as follows:

"The defendant admits purchasing at the price alleged and receiving the feeds sued for and that the same has not been paid, but affirmatively avers that they were bought for the purpose of feeding same to chickens and raising said chickens for the market, and that this purpose was known to the plaintiff; that said feeds were not reasonably suited for the purpose intended; that there was a breach by the plaintiff of the implied warranty; that the feed was wholly or partially worthless and that the consideration has wholly or partially failed. A cross action is filed by the defendant to recover damages for breach of the implied warranty.

"The parties agree that the issues to be submitted to the jury are:

"1. Breach of implied warranty.

"2. Failure of consideration, if any, and extent thereof.

"3. Damages."

The defendant in its counterclaim set up that the value of the feed was not more than $100,000.00 and sought to recover back from the plaintiff the sum of $21,645.36. At the close of the evidence, plaintiff's motion for a directed verdict was overruled and the court gave to the jury an admirable charge, not excepted to by counsel for either party. The jury returned the following verdict: "We the jury find for the defendant"; and judgment was entered accordingly. The plaintiff's motions for judgment notwithstanding the verdict and for a new trial were overruled, and the plaintiff appealed. The question for decision is whether the District Court erred in overruling the plaintiff's motion for a directed verdict and its motion for judgment notwithstanding the verdict.

The evidence established that the feed was bought for use in raising chickens for the broiler market and that this purpose was known to the plaintiff. There was a large volume of evidence both ways as to whether the feed was reasonably suited for the purpose intended. On his counterclaim, the defendant was the only witness who undertook to state any money value for the feed and he testified that, in his opinion, the feed that was billed to him in the sum of $173,834.98 was worth no more than $100,000.00; and, hence, that he had paid to the plaintiff $21,645.-36 too much.

After the evidence had been closed and the court had expressed doubt as to whether the testimony as to failure of consideration or the amount of damages for breach of implied warranty was sufficiently definite to authorize submission to the jury, the defendant asked to reopen the case, but this request was declined by the court. The District Court eventually decided, however, that, although the opinion evidence as to the value of the feed was vague and unsatisfactory, the jury had been furnished with

the facts upon which the opinion evidence was based; i. e. the results of the use of the feed in raising chickens, and "exact proof being here impossible, and the evidence in the case furnishing to the jury means of determining the value of the goods at the time delivered, and being the highest and best evidence obtainable, will not be held to be insufficient." That ruling we do not find necessary to review upon this appeal, because, under the state of evidence, we think that the plaintiff was entitled to a directed verdict for another reason, and that the case, if re-tried, should be upon a more restricted issue.

■ If the payments made by the defendant are applied to the extinguishment of those items of the account which are earliest in point of time, then, the defendant paid for all of the feed sold to him by the plaintiff prior to September 13, 1950. The defendant insists that the payments should not be so applied, because the District Judge asked the plaintiff's treasurer the question, "You just applied the payments to the balance due, didn't you?" and the witness answered, "Yes". That witness further testified: "Q. Applying those payments to the balance due, it would pay up all of his account up to September, 1950, is that right? A. That's right. * * * Q. In other words he's paid for all the feeds that he got prior to September, 1950? A. That is correct." In the absence of an agreement or instruction to the contrary, the payments should be applied to the extinguishment of the items of the open account earliest in point of time.

Georgia Code of 1933, Sec. 20–1006; 40 Am.Jur., Payment, Sec. 132. Such instructions as were contained in the defendant's letters seem to be in accord with that principle.[1]

The defendant claims that, during the entire period of his dealings with plaintiff, he complained of the inferior quality of the feed and that the plaintiff each time promised to make adjustments for defendant's losses and to send better feed in the future, and that it was upon such representations that he continued to use the feed. The plaintiff denied any such representations and no witness undertook to testify to them except the defendant. The defendant wrote plaintiff on January 27, 1949, telling the plaintiff that other mills were guaranteeing poultry raisers against loss of money and suggesting some sort of guarantee from the plaintiff. The plaintiff promptly replied under date of January 30, 1950, "we are unable to make any guarantee whatever to care for losses from market conditions." The chickens were raised by various "growers" under an arrangement by which the defendant furnished to them the baby chickens and the feed and the defendant admitted that he settled with the growers at the feed prices charged him by plaintiff. The defendant's testimony that his payments on the account were made in reliance on the plaintiff's promises to make adjustments for his losses is contradicted by the various letters which the defendant wrote to the plaintiff. None of those letters mentioned any obligation to make adjustment, but instead they admitted owing the account and kept promising to pay it.[2]

1. For example, his letter of September 23, 1949: "I am sending a check for invoices 6212, 4033, 4035, 4037, 4041, 4050 and 5894. I do not have a copy of invoice 6212." His letter of November 23, 1949: "According to our records, we owe you for the following invoices through October 19, 1949, which is the date of our last statement: (Here follows the list of the invoices which appear to have been dated from July 9, 1949 through October 19, 1949)." His letter of December 15, 1949: "I am sending a check for $3772.74, which takes care of the invoice of July 9, No. 6275, and the next one, I think, dated August 26, No. 6546."

2. January 10, 1949: "It will certainly be a convenience to me not to pay invoice No. 2556 on Jan. 21st of this month. I can, if you insist, but it would be much easier if I could pay it around February 26th."

August 22, 1949: "This check is for 1500.00 and as soon as I can I will send more. I would like very much to get ahead."

■ A principle of law bearing upon the burden of proof as expressed by the Supreme Court of Georgia is as follows:

" ' "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal. Western & A. R. Co. v. Evans, 96 Ga. 481, 23 S.E. 494; Freyermuth v. (South Bound) R. Co., 107 Ga. (31), 32, 32 S.E. 668; Ray v. Green, 113 Ga. 920, 39 S.E. 470; Farmer v. Davenport, 118 Ga. 289, 45 S.E. 244. And he is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him." Southern Bank v. Goette, 108 Ga. 796, 33 S.E. 974.' Southern Railway Co. v. Hobbs, 121 Ga. 428, 49 S.E. 294." Davis v. Akridge, 199 Ga. 867, 36 S.E.2d 102, 103.

■ Under that principle, we think that the defendant's claim that his payments on the account were made in reliance upon promise of the plaintiff to make adjustments for the defendant's losses is not supported by sufficient evidence to warrant its submission to the jury. With that claim excluded, it is clear to us that the payments on the account should be applied to the oldest

November 23, 1949: "According to our records, we owe you for the following invoices through October 19, 1949, which is the date of our last statement:"

February 13, 1950: "Inclosed you will find my personal check for 2000.00 to be applied to my account, and soon I hope to be able to send another.

" * * * They sure caused me to lose a good bit of money and if your mill had not been so nice to send me the feed on I sure would have been in a jam. I want you to know I sure appreciate this and I will do my best and pay my bill as readily as possible."

April 13, 1950: "As soon as I'm able to sell there, I will send a check."

August 30, 1950: "We've had sick chickens again and $3,000 is the best we can do at present. We are planning to sell some broilers the first of next week and will send another check then."

December 12, 1950: "We appreciate your being so lenient with us and we do feel that we will make progress in the spring. This is the only debt we owe and we have definite plans to wipe this debt out. The only spending we are doing is in the direction we feel will help us to clear this indebtedness.

"We will appreciate your coming at any time and giving us advice. We will do all in our power to remove this debt as soon as possible."

April 23, 1951: "Nothing would give us more pleasure than to be able to send ten or twenty thousand now, because the going seems rough and slow, but we just keep working and figuring on ways to improve our methods. * * *

"Just as soon as it's possible we'll send another check, and thank you very kindly."

May 10, 1951: "The market is down too, but we feel that if we can make it two more weeks, we will be able to send you money every week. * * *

"Sometimes the situation looks dark, but we know we've just got to succeed, and we do honestly think we will be in a position to do something about our feed debt in another week or two. We are sincerely grateful for your patience and understanding, and believe us, we are doing our utmost."

July 9, 1951: "If our greatest desire was anything other than to pay Roanoke City Mills off, we surely wouldn't have toughed it out this far. * * *

"We realize that if all your customers were like us, you'd have to go out of business, but we want you to understand clearly that we're not throwing money around, living high, or holding out on you in any way. * * *

"Of course our good intentions don't buy you grain & feedstuffs, but we hope you know that our intentions are good we hope you can see fit to bear with us awhile longer."

July 19, 1951: "We will send another check as soon as possible."

"July 25, 1951, the plaintiff wrote to the defendant suggesting that the defendant take over some other indebtedness of the plaintiff's in the amount of $6500.00 and the plaintiff would secure the aggregate indebtedness with a mortgage, the letter containing the following sentence: "It may be ridiculous for us to even suggest such a thing to you, but it seems that $6500 isn't much against $52,000."

items and, hence, that the defendant has paid for all feed shipped to him by the plaintiff prior to September 13, 1950.

The defendant was habitually late in his payments and those payments were made not only after he had examined the feed but after he had used the feed and had an opportunity to observe the results with the chickens, which ordinarily matured to the broiler stage in from eleven to twelve weeks. Assuming then that the feed was defective, the defendant had actual knowledge of any such defect at the time he paid the account up to September 13, 1950, and, thereby, he has conclusively waived any such defects. Madison Supply & Hardware Co. v. Brown Carriage Co., 137 Ga. 195, 73 S.E. 344; Means v. Subers, 115 Ga. 371, 41 S.E. 633; Montfort v. Americus-Guano Co., 108 Ga. 12, 33 S.E. 636; Harder v. Carter, 97 Ga. 273, 23 S.E. 82; Shores-Mueller Co. v. Bell, 21 Ga.App. 194, 94 S.E. 83.

The content of the feed changed from time to time and, hence, by paying for the feed delivered prior to September 13, 1950, we do not think that, as a matter of law, there is any waiver or that the defendant is estopped to claim failure of consideration or breach of implied warranty as to the feed furnished after that date. As said in the case of Means v. Subers, supra [115 Ga. 371, 41 S.E. 633] the waiver which the law enforces in such a case "is one founded upon actual knowledge." The evidence did not show that the plaintiff suffered any injury because of the defendant's acknowledgment of a $52,000.00 indebtedness to the plaintiff in his last letter of July 25, 1951, and, in the present state of the evidence, the defendant is, therefore, not estopped by that acknowledgment. Pearson v. Brown, 105 Ga. 802, 31 S.E. 746; Bank of Lumpkin v. Bank of Stewart County, 20 Ga.App. 1, 92 S.E. 778. The defendant's claims of breach of implied warranty and failure of consideration as to the $52,189.62 balance on the open account should, however, be confined to the feed furnished by the plaintiff to the defendant after September 13, 1950, and for which the defendant had not made payment. There was no sufficient evidence to prove separately as to the feed delivered in this period any difference between the contract price and the actual value of the goods at the time and place of delivery. On the evidence as it stood, therefore, the plaintiff was entitled to a directed verdict. The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.