## REEVES *v.* WILLIAMS & COMPANY *et al.*

1. A failure to speak is fraud by silence, where one uses silence for the purpose of gaining an unconscionable advantage over another by concealing for his own benefit information which in equity and good conscience should be communicated. Although fraud must be clearly proved, it is for the jury to say what facts and circumstances are adequate to authorize an inference of· fraudulent intent and sufficient to establish the existence of fraud.
2. The evidence would have authorized a finding in favor of the plaintiff; but the evidence was conflicting, and there was evidence authorizing a finding in favor of the intervenor under the principle announced in the first headnote; and therefore the trial judge did not err in overruling the motion for new trial.

No. 4385.   FEBRUARY 26, 1925.

Distraint; intervention. Before Judge Irwin. Polk superior court. April 17, 1924.

On September 21, 1922, the sheriff of Polk County levied in favor of R. B. Reeves a distress warrant for $556.25, alleged to be the value of 2500 pounds of lint-cotton due as rent for 1922, against Tom Hughes, tenant of Reeves. The levy recited that the sheriff had levied on all the crops of the Reeves farm in the possession of Hughes and his two subtenants, consisting of about 45 acres of cotton, 200 pounds of seed-cotton, 12 acres of corn, and 1-1/2 acres of syrup-cane. Reeves, in suing out the distress warrant, alleged that the 2500 pounds of lint-cotton had been agreed on as rent for 1922 between him and Hughes. B. T. Williams & Company, a farmers' supply store, filed its equitable intervention and alleged that five or six years ago Reeves had stated that Hughes was his tenant, but, being unable to furnish him supplies as he had been doing, Reeves desired intervenor to fur-· nish same to said tenant; that intervenor agreed to do so, and for three or four years furnished Hughes supplies with which to make crops, during which time Hughes paid Reeves rent on the

basis of third and fourth, which means one fourth of the cotton and one third of the other crops: that up to the year 1922 Reeves rented Hughes the place on this basis, and the intervenor received from Hughes all the cotton grown on the place, and itself settled with Reeves for his share as rent; that in the fall of 1921 Reeves and Hughes made a contract for 1922 on this basis; that following this agreement Hughes, in arranging for 1922 supplies, gave intervenor. a mortgage on said crop; that the mortgage covered all the cotton grown in 1922, as there was less than fifty acres of cotton for that year; that after intervenor had furnished Hughes supplies for 1922, Reeves, knowing intervenor had done so, went to Hughes and demanded that the rental contract be changed to standing rent for 1922; that on or about May 5, 1922, Reeves and Hughes made a new rental agreement whereby Hughes was to pay Reeves 2500 pounds of lint-cotton for 1922; that said agreement was unknown to intervenor, which charges that Reeves and Hughes conspired to keep intervenor from knowing of same, because they knew intervenor would refuse to furnish supplies if it knew of said new agreement, and they so conspired to induce intervenor to furnish said supplies; that there is due and owing intervenor the sum of $357.55 for 1922 supplies furnished by it, covered by the mortgage, and the sum of $827.04 for previous years on said mortgage; that the 1922 cotton crop is insufficient to pay intervenor for supplies furnished and pay the 2500 pounds of cotton claimed by Reeves, and the corn is not worth more than $50; that the trade between Reeves, Hughes, and intervenor for 1922 was the same as those for the previous years, and intervenor had no notice of any change until the distress warrant was sued out; that intervenor would receive practically nothing if Reeves were allowed to enforce the new contract; and that intervenor foreclosed its mortgage and placed the fi. fa. in the hands of the sheriff claiming the funds to arise from said crop. The intervenor prayed that the new standing rent contract between Reeves and Hughes be declared null and void so far as intervenor was concerned; and that the funds arising from the sale of the crop levied on under the distress warrant be awarded to intervenor on its mortgage fi. fa., after paying the usual third and fourth rent to Reeves.

Reeves filed an answer to the intervention, denying all its material allegations. He set up that he had nothing whatever to do

with any transaction by which the intervenor was to furnish any supplies to Hughes; that intervenor had received from Hughes and applied on its mortgage a bale of cotton worth $125, knowing Reeves had a superior lien on the 1922 crop for rent; and that the intervenor was liable to him for the value of said bale of cotton. On the trial Reeves introduced testimony of himself and of his son, tending to establish his contentions. Reeves testified he knew nothing of any agreement by which the Williams Company was to furnish supplies to Hughes for 1922; and that he made no other rental agreement with Hughes for 1922, excepting the one for standing rent. The intervenor introduced evidence tending to establish the allegations of its intervention. Hughes testified, that he made no agreement with Reeves for standing rent for 1922 until February; that when he told Reeves that the Williams Company would not supply him for that year if they knew of any change in the method of rent, Reeves said the company would not know it; and that Reeves was the first to suggest the change to standing rent. Hughes testified he had been in the habit of turning his crop over to the Williams Company, which credited him and paid Reeves his part.

At the close of the evidence counsel for Reeves moved the court to direct a verdict in his favor. The court sustained the motion as to Hughes, who had filed a counter-affidavit which the court held set up no defense; but the court refused to direct a verdict as against the intervenor, and the case went to the jury on the contentions between the plaintiff and the intervenor. The jury returned a verdict in favor of the intervenor. The plaintiff filed a motion for new trial on the general grounds, later amending the same by adding special grounds. The court overruled the motion, and the plaintiff excepted.

*Mundy & Watkins,* for plaintiff. *Bunn & Trawick,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) In the fall of 1922 R. B. Reeves foreclosed a distress warrant for rent on a crop raised by his tenant, Tom Hughes, claiming 2500 pounds of lint-cotton as rent for said year. Hughes filed a counter-affidavit, and Williams & Company filed an equitable intervention, setting forth the circumstances which appear in the statement of facts, and alleging that it had no notice or knowledge of the change in the rent contract, and that if any change was made it

2

was made about May 5, 1922, without notice to intervenor, although Reeves knew that intervenor was furnishing his tenant with supplies in the belief that the rental contract was on the basis of a third and a fourth of the crop actually raised, and although Reeves knew intervenor would not have furnished said supplies under such a contract as he was attempting to enforce. From the evidence it does not appear that the intervenor sustained its allegation that the contract of May 5, 1922, was a substitution for any agreement between Reeves and the tenant for a rental of "third and fourth," made in the fall of 1921; nor did intervenor establish that Reeves in words suggested to his tenant, at the time they entered into the contract which is in evidence, that Hughes should falsely state the nature of the agreement actually made. It must be assumed from the verdict that the jury accredited the testimony of Hughes to the effect that, at the time of making the contract proposed by Reeves, Hughes told Reeves that if Williams & Company knew Hughes was to pay 2500 pounds of lint-cotton as rent, Williams & Company would not advance him supplies for 1922, and that Reeves told Hughes that intervenor would not know it. Coupled with this there was evidence that Reeves knew Williams & Company knew that previous rental contracts had been on the basis of third and fourth. Not only from this circumstance, but as a matter of law, the intervenor had the right to assume that the rental would continue the same in 1922 as in previous years. In these previous seasons Williams & Company had paid Reeves his rentals of one fourth of the cotton and one third of all other crops, the tenant delivering the entire crop to Williams & Company to be applied upon his indebtedness for supplies after deducting said rentals.

But it is insisted first that the rights of the landlord are not to be affected by any belief on the part of a third party, no matter how such party's welfare might be affected by a delusion as to a matter in which he is not concerned. It is asserted, and it is sound law, that a landlord has a right to make such agreement for the rental of his land as may be agreeable to the tenant, and that no one who may supply his tenant with articles necessary to make a crop can complain, unless the landlord says or does something to deceive the person supplying the same. It is urged that the landlord can not be estopped to assert the priority of his lien over that of a mortgagee on the crops, under such circumstances

as those developed in this case; and the quotation from Bigelow on Estoppel, used in *Palmer* v. *McNutt,* 97 *Ga.* 440 (25 S. E. 408), is also here used with propriety: "It is not enough to raise an estoppel, that there was an opportunity to speak which was not embraced; there must have been an imperative duty to speak. Nor is any duty generated by the mere fact that a man is aware that some one *may* act to his prejudice if the true state of things is not disclosed." It is plain that Reeves is a third party to the contract between Williams & Company and Hughes, and it is equally plain that Williams & Company is a third party to the contract between Reeves and Hughes. We concede that Reeves must have done something to deceive Williams & Company, before he would be estopped to assert his contract for 2500 pounds of cotton and required to accept the third and fourth portions of the crops produced as formerly; and *Newsom* v. *Jackson,* 26 *Ga.* 241 (2) (71 Am. D. 206), is cited to support this contention. According to Hughes' testimony, Reeves intentionally did something. He kept silent when there was an obligation to speak. Silence may be fraud. Silence alone can not create fraud, but fraud may be the offspring of conjunction of silence with the breach of a duty to speak when good conscience requires speech. Under section 4624 of the Civil Code, there are circumstances under which one may sustain such relationship to another as will impose an obligation to disclose a change from prior conditions (which operated to the advantage of the latter) to a new state of affairs under which a continuance of the former course of action would be most disastrous. In such event, the change of conditions would impose a duty of disclosure, and constructive fraud at least may be implied from a failure to speak, where one uses silence for the purpose of gaining an unconscionable advantage.

If A, a landlord, who for several years had furnished his tenant, B, with no supplies or guano, but who had permitted C, a dealer in farming supplies and guano, to furnish the same to his tenant with his knowledge, C taking crop mortgages on the entire crops and receiving all the products raised by the tenant, and paying therefrom for the tenant one third of all crops except cotton, and one fourth of the cotton raised upon the farm, the supply dealer also furnishing the tenant, in addition to guano and other supplies necessary to make the crop, the live stock with which the land was cultivated, this, without more, might not authorize an

inference of a fraudulent intent on the part of the landlord if he changed the contract of rental with his tenant from a rental of a third and a fourth to a standing rent of such proportions that nothing would be left to pay for the supplies, guano, and stock, without which no crop could be made and no rent at all be paid; for A would have the right to make such contract as might be agreed upon between himself and B, his tenant, and C would be a third party outside of the contract. But if A, knowing that C would most probably furnish supplies, guano, and live stock for B, the tenant, to make the crop to be planted in an approaching farming season, made with his tenant a new and different contract from that theretofore existing, knowing that C, from the previous course of dealing, would most likely furnish the supplies and stock as in previous years unless he knew that the contract was changed, but purposely concealed, and abetted his tenant, B, in concealing from C knowledge of the fact that the contract of rental had been changed so that C was likely to lose the value of the supplies, guano, and hire of the live stock furnished by him, from failure to disclose the true condition of affairs, this would be a circumstance sufficient to authorize the jury to find that the contract which A induced B to make for the benefit of A only was a fraud upon C.

We have not been cited to any ruling of this court upon facts identical with those of this case; but considering the general principles as to fraud laid down in our Code, we are convinced that the verdict, under the evidence adduced, is not contrary to law. Section 4419 of the Civil Code declares that "a fraud may be committed by acts as well as words." Silence is an act when it is intentionally used to suppress the truth. Suppression of the truth is not a fraud unless used as a means of deceiving another. No man is compelled to break silence and speak, unless there is an obligation resting upon him to speak. However, an obligation to speak may, under particular circumstances, be a suppression of the truth, within the terms of section 4624, supra. That section declares: "Suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise . . from the particular circumstances of the case." It is true that, as a general rule, one who is contracting with another is under no

obligation to make disclosure of his own affairs to any third party, and so much of section 4624 as relates to the obligation to communicate arising from confidential relations has no application to the case before us; but it would seem to be a sound rule to place within "the particular circumstances" referred to any case where a person intentionally concealed a fact from a certain other person, hoping thereby to derive a benefit, and knowing that only by silence and by concealing the truth would the anticipated benefit accrue. This would proceed upon a similar reason as the principles laid down in the code section, applying to two parties who are making a contract; and where one of them knows that the other understands the contract in a different sense from that in which he himself construes it, and remains silent, the former is held bound by the meaning which he knew was entertained by the opposite party. Civil Code (1910), § 4267. According to the evidence in behalf of the intervenor, the plaintiff in error could not reasonably be held not to have known that Williams & Co. were under the impression, it matters not whether from Tom Hughes or some other person, that Hughes would pay the same rent as in previous years. With knowledge of this fact the plaintiff suggested to the tenant that it was best that Williams & Co. should not know of the change of the contract, or at least sanctioned the suggestion of silence when told by Hughes that he would be unable to obtain supplies if Williams & Co. knew of the increased rental for 1922.

In reply to the argument that the evidence did not authorize the jury to find that the silence of Reeves was intentional and maintained for the purpose of getting an advantage by inducing Williams & Company to supply Hughes, his tenant, because he had been informed by Hughes that he had sufficient supplies to make the crop of 1922, we can only say that the real truth as to all matters appearing in the record was for the determination of the jury upon consideration of all the evidence. Conceding that Hughes made the foregoing statement to Reeves, still, under the evidence as to farming conditions in 1920 and 1921 and the knowledge of Reeves as to where Hughes had obtained his supplies in 1920 and 1921, the jury were authorized to find that the statement of Hughes to Reeves, his landlord, that he had supplies enough for 1922 (when the truth was that he had delivered all of his crop for 1921, except a few bushels of corn, to Williams &

Company, and the very live stock to be used in making the 1922 crop was the property of Williams & Company) was so incredible that Reeves should not have relied upon it. There is evidence in the record which would have authorized the jury to go further and find that Reeves did not rely upon it.

*Judgment affirmed. All the Justices concur, except Gilbert, J., dissenting.*