29030.  PATTERSON-POPE MOTOR CO. *v.* FORD MOTOR CO. *et al.*

DECIDED SEPTEMBER 18, 1941.  REHEARING DENIED OCTOBER 14, 1941.

42

44

*Hewlett & Dennis, T. F. Bowden, Frank D. Foley,* for plaintiff.
*MacDougald, Troutman & Arkwright, Spalding, Sibley, Troutman & Brock, Hubert Calhoun,* for defendants.

GARDNER, J. ■ This headnote needs no elaboration.

■ A conspiracy alone will not support a cause of action. *Reeves* v. *Maynard,* 32 *Ga. App.* 380 (123 S. E. 181) ; *Woodruff* v. *Hughes,* 2 *Ga. App.* 361 (58 S. E. 551). In *Brown & Allen* v. *Jacobs' Pharmacy Co.,* supra, the court said: "It will be readily perceived that, if the conspirators stopped with conspiring, and did nothing further in execution of the design, no injury would have been done which would furnish a basis for a civil action." In addition to the conspiracy there must be overt acts to give the conspiracy effect which must result in damages which have their causal connection in the conspiracy. *Woodruff* v. *Hughes,* supra; *Wall* v. *Seaboard Air-Line Ry.,* 18 *Ga. App.* 457 (2) (89 S. E. 533) ; *Reeves* v. *Maynard,* supra. "If, in carrying out the design of the conspirators, overt acts were done, causing legal damage, the person damaged had a right of action." *Brown & Allen* v. *Jacobs' Pharmacy Co.,* supra.

■ For all purposes we must take as true the allegations of the petition as amended. We think that the unlawful and immoral design which grew out of the conspiracy was the control, financial ruin, and elimination of the plaintiff as a competitor of the Burrus Motor Company, and that the means employed were the medium of a dealer's contract which was regular in form and, apparently, in all respects as to rights, obligations, privileges, and benefits, and in containing a usual cancellation clause providing "this agreement may be terminated at any time at the will of either party by written notice to the other party given either by registered mail or personal delivery." It appears that the ultimate consummation of the design was the cancellation of the contract under the right conclusively reserved under the above-quoted clause. Was such contract tainted with fraud? If so, the act of cancellation, though made ostensibly in pursuance of the contract yet in fact in pursuance of the original fraudulent scheme conceived in the con-

spiracy, is not saved by color or immunity of contract containing an enabling provision permitting the act complained of. Did the Ford Motor Company offer any fraudulent inducements to secure the execution and acceptance by the plaintiff of its dealer's contract? The answer must be that only those inducements were offered which sprang normally from the contract relatively to its many provisions and the many advantages and profits ordinarily derived from a dealer's contract for the sale of Ford products to continue until some changed condition arose not then known to exist under this and similar dealers' contracts. Did the Ford Motor Company in execution of the contract with the plaintiff conceal from the plaintiff any facts which it was under a duty to disclose? The answer must be in the affirmative. One of the inducements which promoted the acceptance of the contract was, it must be assumed, that the plaintiff was being offered and was accepting a contract which had a time to run or operate so far as either party under this, as under similar contracts, then knew on a good-faith basis or track, until the advent of some contingent event not then known to exist by either of the parties at the time of executing the contract,—notwithstanding the defeasance provision in the contract allowing it to be canceled at the will of either party. Contracts are made in contemplation of performance, not defeasance; honesty, not trickery or fraud; mutual profit, not injury. The plaintiff had the right to believe, and to act on the assumption, that the contract was being offered by the Ford Motor Company in entire good faith, and in contemplation of *extended* performance to the mutual profit of each. The presence of the defeasance clause was not notice to the contrary. Consequently the plaintiff had a right to assume that the certainty of *extended* force in the contract was superior to the chance or likelihood of cancellation, especially from caprice or a motive to injure secretly then grounded in an existent conspiracy. Therefore, when the Ford Motor Company well knew that the contract it was offering was already a "definitely abridged contract;" that it had no intention of permitting it to run over the entire span of its contemplated life, but that pursuant to the conspiracy it would untimely invoke the cancellation clause, and failed to disclose such facts to the plaintiff at the time of the execution of the contract, the failure to disclose was fraudulent and the contract became so tainted. Code, § 37-704.

Mere silence did not alter the rule. *Reeves* v. *Williams,* 160 *Ga.* 15 (127 S. E. 293). So, the final act of consummation was not saved by any inherent virtue of the contract. The petition charged a conspiracy, an unlawful design, an immoral means by a fraudulent contract, a final consummation of the design pursuant to the conspiracy, and damages. It set forth a cause of action. The court erred in sustaining the objections of the Ford Motor Company to the allowance of the amendments and in dismissing the action.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*