74159. GUERNSEY PETROLEUM CORPORATION v. DATA
GENERAL CORPORATION et al.
74160. COHEN v. GUERNSEY PETROLEUM CORPORATION.
74161. DATA GENERAL CORPORATION v. GUERNSEY
PETROLEUM CORPORATION.
(359 SE2d 920)

BEASLEY, Judge.

These appeals arise out of a controversy which resulted when Guernsey Petroleum Corporation (a petroleum developer) entered into a contract with Interactive Systems Corporation (a computer software and hardware marketer) on July 13, 1982. The contract was executed by Cohen, president of ISC, and Freedman, president of Guernsey. In return for a stated consideration ISC agreed to supply Guernsey with a computer system, including hardware manufactured by Data General and software customized by ISC. The contract provided that time was of the essence and ISC guaranteed that the software programs would be ready and operable before January 1, 1983. According to Guernsey, ISC failed to complete their part of the agreement on time and had not completed performance some fifteen months after the due date so that Guernsey was forced to undertake completion of the contract at its own expense.

The litigation began when Data Concepts, Inc. d/b/a ISC filed suit against Guernsey contending Guernsey had breached the contract by failing to pay $4,000 of the purchase price and that ISC had performed extensive modifications and enhancement to the software programs valued at $25,000. The complaint also alleged Guernsey had interfered with ISC's employment agreements with its employees and had cost ISC lost profits by failing to comply with the provision of the contract for marketing the software programs to other oil and gas companies.

Guernsey filed a separate action in Cobb County which was voluntarily dismissed when it was permitted to file an amended counterclaim to the action brought by ISC. Named as defendants in the counterclaim were Data Concepts and Interactive Consulting Systems, two corporations of which Cohen was president and which did business as ISC, Cohen individually, since he acted as purported president of ISC, a non-existent corporation, and Data General, the manufacturer of computer hardware provided to Guernsey under the contract. Recovery of damages was sought for breach of contract, breach of express and implied warranties, and fraud.

Data General joined in by filing an amended answer to the coun-

terclaim which included a counterclaim against Guernsey for malicious abuse of process. By counterclaim Data General alleged that it was neither a party to the contract nor a party to the preliminary negotiations to the contract, and that Guernsey's claim against it was a bad faith effort to force Data General to gratuitously provide it with goods and services.

After extensive discovery, various motions for summary judgment were filed by the parties. This culminated in an order which: 1) granted Cohen's motion for summary judgment as to three counts of fraud (V, VI, and VII) alleged against him by Guernsey in its counterclaim; 2) granted Data General's motion for summary judgment as to Guernsey's counterclaim against it; 3) denied Cohen's motion for summary judgment as to the allegations of Guernsey's counterclaim which sought recovery against him individually; 4) granted Guernsey's motion for summary judgment as to Data General's counterclaim against it alleging malicious abuse of process. Numbers 1 and 2 are the subject of appeal 74159, and numbers 3 and 4 are the subjects of appeals 74160 and 74161 respectively. They are considered seriatim.

1. Case No. 74159 involves Guernsey's complaint insofar as it seeks to recover for alleged fraud on the part of Cohen and Data General.

We consider first whether the trial court properly granted partial summary judgment to Cohen and dismissed those counts (V, VI and VII) which alleged he was guilty of fraud in the procurement of the contract entered into on July 13, 1982. "Where fraud in the inducement is alleged, the pleader has a choice between rescinding the contract or affirming it. If he rescinds he is not bound by any of its provisions, but in order to rescind successfully he must return or offer to return the subject matter of the sale in order to place the seller in the same situation in which he was prior to the transaction. If he affirms and suffers damages he is entitled to recover those damages which he can prove, but he is *bound by the contract*, having elected to stand upon it." (Emphasis original.) *Garrett v. Diamond*, 144 Ga. App. 428, 430 (2) (240 SE2d 912) (1977).

Guernsey has not offered to restore the items it received under the contract and has not rescinded it. Instead, it has chosen to affirm and seek damages under the contract. *Condios, Inc. v. Driver*, 145 Ga. App. 537 (1) (244 SE2d 85) (1978). Guernsey contends that it can affirm and still sue in tort for fraud. In so reasoning Guernsey misconstrues *Garrett*, supra.

By choosing to affirm, Guernsey eliminated fraud as a cause of complaint against Cohen. "[W]here the purchaser affirms a contract which contains a merger or disclaimer provision and retains the purchased articles, he is estopped from asserting that he relied upon the seller's misrepresentation and his action for fraud must fail." *Roth v.*

*Bill Heard Chevrolet*, 166 Ga. App. 583 (305 SE2d 31) (1983). Having elected to affirm the contract Guernsey is bound by its provisions, including the merger provision, and cannot assert reliance on alleged false representations made prior to the contract's execution. *Kot v. Richard P. Rita Personnel*, 134 Ga. App. 438 (214 SE2d 690) (1975); *Nixon v. Sandy Springs Fitness Center*, 167 Ga. App. 272, 273 (2) (306 SE2d 362) (1983).

No error appears from dismissing the counts charging Cohen with fraud.

2. In Case No. 74159 error is assigned to granting Data General's motion for summary judgment. Guernsey asserts three bases for Data General's liability to it: a) an agency relationship between Data General and Cohen; b) Data General's actual or constructive fraud through concealment or statements made with reckless disregard for the truth; c) Data General's duty both in tort and contract to Guernsey.

a) Under the circumstances here, could Data General and Cohen be considered partners or did the relationship of principal and agent arise so as to impose liability upon Data General on the contract?

The existence of agency may be proved by showing circumstances, apparent relations, and conduct of parties. *Browning v. American &c. Travel Co.*, 163 Ga. App. 110 (294 SE2d 362) (1982). "It has long been the Georgia rule that one who is a party to the [alleged] relationship (the principal or agent) may testify as a fact as to the existence or non-existence of the relationship and that such testimony would not be subject to the objection that the statement was a conclusion or the ultimate fact." *Commercial Union Ins. Co. v. Taylor*, 169 Ga. App. 177, 180 (312 SE2d 177) (1983). The denial of the existence of any agency relationship may thus constitute an uncontradicted fact which will sustain a motion for summary judgment. Where the other party attempts to controvert this fact by circumstantial evidence "it must be evidence sufficient to support a verdict." *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 780 (257 SE2d 186) (1979). "The circumstantial evidence . . . must tend to establish the conclusion projected while rendering less probable all inconsistent conclusions." *Cohen v. Hartlage*, 179 Ga. App. 847, 850 (348 SE2d 331) (1986).

Tested by the applicable principles we find no evidence sufficient to establish that relationship. Both Cohen and Data General denied they operated either as a partnership or that there was a principal-agent relationship. Having no direct evidence as to agency the burden was upon Guernsey to introduce circumstantial evidence sufficient to carry the case to a jury.

It is axiomatic that neither an interest in the success of an enterprise, *McCulley v. Dunson*, 149 Ga. App. 551, 553 (1) (254 SE2d 877)

(1979), nor a close relationship, *Hinely v. Barrow*, 169 Ga. App. 529, 531 (313 SE2d 739) (1984), establish an agency relationship. Although the term "partnership" regarding Cohen/ISC and Data General may have been used during negotiation, there is no evidence that Guernsey believed it was entering into an agreement with Data General. It is evident that Freedman, Guernsey's executive officer, who made the decision to enter into the contract with Cohen/ISC, recognized that Cohen and Data General were separate entities and that Data General was in no way a party to the contract. It was perfectly clear to Guernsey that the contracting party was Cohen/ISC. At most the only function of Data General, as manufacturer of the end use product, was to stand behind Cohen. It should be noted that Guernsey does not rely on any manufacturer's express or implied warranty or failure of the hardware as a ground for recovery from Data General.

b) The question as to whether certain statements made by Data General's representatives at a presentation on April 21, 1982, amounted to fraudulent misrepresentations or concealment is more difficult to resolve. "[E]ssential elements of an action for fraud are: . . . (1) the defendant made the representation; (2) he knew the representation was false at the time; (3) he made it with the intention and purpose of deceiving the plaintiff; (4) the plaintiff reasonably relied upon the representation; (5) the plaintiff sustained the alleged loss and damage as a proximate result of the defendant's representation." *Morrison v. Hayes*, 176 Ga. App. 128 (335 SE2d 596) (1985). See *City Dodge v. Gardner*, 232 Ga. 766, 769 (208 SE2d 794) (1974).

In our view the crucial issue here is whether the chief executive officer of Guernsey was justified in relying on statements he contends misled him.

" '[M]isrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And where the representation consists of general commendations or mere expressions of opinion, hope, expectation, and the like, and where it relates to matters which from their nature, situation, or time, can not be supposed to be within the knowledge or under the power of the party making the statement, the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth.' " *Rogers v. Sinclair Refining Co.*, 49 Ga. App. 72, 75 (174 SE 207) (1934). "Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." *Riddle v. Driebe*, 153 Ga. App. 276, 281 (265 SE2d 92) (1980). Expressions which amount to no more than mere sales "puffing" do not constitute legal fraud. *Terhune v. Coker & Co.*, 107 Ga. 352, 354 (33 SE 394) (1899); *Wilkinson v. Walker*, 143 Ga. App. 838, 839 (1) (240 SE2d 210) (1977).

Basically the representations on which Guernsey asserts it relied are statements made at the sales presentation by Data General's representatives that: Data General would "stand behind" and "support" Cohen if he were awarded the contract; Cohen was qualified and authorized to install Data General Business Basic Software and he was qualified and capable of writing custom software.

Without detailing the voluminous facts contained in this record, a brief recitation of pertinent facts available to Guernsey is appropriate. The computer system Guernsey intended to replace was based on NCR hardware. Cohen was an ex-NCR salesman and had dealt with Guernsey for about ten years. Cohen had been an original equipment manufacturer (distributor or supplier) for Data General only a comparatively short time. Prior to entering into the contract but after the sales presentation, Cohen was recommended by an investigator hired by Guernsey to evaluate Cohen's proposal and compare it to that of NCR.

Guernsey was aware that Cohen did not have a good reputation among competing vendors, and from Cohen's customers, it learned of problems with Cohen. On the same date as that of the contract Freedman wrote a complimentary letter to Cohen expressing reasons why he selected Cohen's computer system, which letter contained no reference to reliance on Data General's representations. By subsequent deposition Freedman repudiated the letter but recognized that it contained his beliefs at the time the letter was written.

Freedman was a seasoned businessman with equal knowledge and opportunity to ascertain the facts equal to that of Data General. The parties were acting at arm's length to complete a business transaction. Although Data General may have had reason to doubt Cohen's ability there is no showing that its knowledge was such as to make what were at most overly assertive business assurances into knowingly fraudulent misstatements. It would be an imposition of much higher standards than those normal for the marketplace to characterize as fraud Data General's assertions that Cohen was very competent and capable of performing, when it is basically no more than hindsight to now ascertain that he may not have been.

While some of the statements might have been inaccurate, they were not of such nature as to obviously mislead or justify the reliance of anyone other than a novice to business transactions. *Charter Med. &c. Co. v. Ware Manor*, 159 Ga. App. 378 (283 SE2d 330) (1981); *Marler v. Dancing Water Lakes*, 167 Ga. App. 99 (1) (305 SE2d 876) (1983). Further, there is no evidence that Data General was privy to the knowledge that Cohen did not intend to and could not perform satisfactorily.

Under these circumstances, the allegations of fraud cannot be . sustained.

c) Guernsey sought to impose liability upon Data General based upon the theory of negligent misrepresentation as described in *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983). Since that case approved the Restatement of Torts 2d, § 552 (1977) which sets forth essentially the same five elements to recover as are required for fraud, we find that Guernsey failed to show that it was justified in relying upon the alleged negligent misstatements attributed to Data General.

The trial court did not err in granting Data General's motion for summary judgment as to Guernsey's counterclaim.

3. Case No. 74160 involves the denial of Cohen's motion regarding Guernsey's counterclaim. Cohen contends he could not be sued in his individual capacity. He argues that he was acting solely as president of ISC and that Guernsey was dealing solely with ISC and is thereby estopped to deny its corporate existence. See OCGA § 14-5-4; *Cahoon v. Ward*, 231 Ga. 872, 874 (204 SE2d 622) (1974).

In *Don Swann Sales Corp. v. Echols*, 160 Ga. App. 539, 541 (287 SE2d 577) (1981), this court considered "whether an *individual* purporting to act for a non-existent corporation can escape liability on a contract by defending on the basis of the non-existent corporation." The doctrine of corporation by estoppel was found not to apply. Accord *Echols v. Vienna Sausage Mfg. Co.*, 162 Ga. App. 158, 159 (2) (290 SE2d 484) (1982).

Cohen asserts that ISC was the name under which Data Concepts, Inc., did business. Therefore, there was a corporation in existence, although with a different name, which means that corporation by estoppel would be applicable. *Goodwyne v. Moore*, 170 Ga. App. 305, 306 (1) (316 SE2d 601) (1984). What this argument overlooks is that ISC was registered as trade name for Cohen and his sister, J. C. Estner. As such ISC could be a non-existent corporation and would come under the ruling in *Don Swann*, supra, and *Echols*, supra. The trial court properly declined to remove this issue from the jury's consideration.

4. Case No. 74161 concerns the trial judge's dismissal of Data General's counterclaim which sought recovery against Guernsey for malicious abuse of process.

We are immediately faced with the question of the applicability of *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986), decided June 25, 1986. Here the order in question was entered May 27, 1986 and notice of appeal filed June 25, 1986. In several cases we have applied *Yost* without discussion as to its retroactive aspects. See *Williams v. Patel*, 179 Ga. App. 570 (347 SE2d 337) (1986); *Smith v. Pierce*, 179 Ga. App. 724 (347 SE2d 692) (1986); *Young v. Bank of Quitman*, 180 Ga. App. 491, 492 (1) (349 SE2d 510) (1986); *Howell v. Bank of Fitzgerald*, 181 Ga. App. 57, 59 (1) (351 SE2d 258) (1986); *Rothstein v. L. F.*

*Still & Co.*, 181 Ga. App. 113, 116 (2) (351 SE2d 513) (1986).

It is a well established principle that "a reviewing court should apply the law as it exists at the time of *its* judgment rather than the law prevailing at the rendition of the judgment under review, and may therefore reverse a judgment that was correct at the time it was rendered and affirm a judgment that was erroneous at the time, where the law has been changed in the meantime and where such application of the new law will impair no vested right under the prior law." *City of Valdosta v. Singleton*, 197 Ga. 194, 208 (28 SE2d 759) (1944). Accord *Long v. Bruner*, 171 Ga. App. 124, 126 (2) (318 SE2d 818) (1984); *Osteen v. Osteen*, 244 Ga. 445 (260 SE2d 321) (1979). Therefore, in testing whether Data General asserted a valid counterclaim against Guernsey we apply the precepts of *Yost*.

In our determination we observe the caveat of *Monroe v. Sigler*, 256 Ga. 759 (353 SE2d 23) (1987), a malicious prosecution case. The court warned of the danger inherent in favoring suits brought for malicious prosecution. The result would tend to seriously hamper the public policy of encouraging citizens to report crimes and bring apparently guilty individuals to justice. By the same token, zealous favoring of abusive litigation allegations can create a bar to access to the courts for civil litigants.

A *Yost* claim arises under these definitive circumstances: "Any party who shall assert a claim, defense, or other position with respect to which there exists such a complete absence of any justiciable issue of law or fact that it reasonably could not be believed that a court would accept the asserted claim, defense, or other position; or any party who shall bring or defend an action, or any part thereof, that lacks substantial justification, or is interposed for delay or harassment; or any party who unnecessarily expands the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures, shall be liable in tort to an opposing party who suffers damage thereby." *Yost*, supra at 96.

Guernsey's allegations and the proof offered in substantiation of its claim of fraud can in no sense be categorized as being completely devoid of any justifiable issue of law or fact. The issues were hardly clearcut and posed a serious question both for the trial court and this court. Guernsey's claim cannot be considered as lacking substantial justification or as being interposed for delay or harassment.

Although *Yost* contemplates bifurcation and postponing a decision on the issue until after the main trial, where the issue can be determined as a matter of law summary judgment is an appropriate remedy. We need not delay a final adjudication of this matter because as a matter of law it reasonably could be believed that a court would accept the asserted claim. That being true, summary judgment was

properly granted in Guernsey's favor. See *Howell*, supra, and *Rothstein*, supra.

*Judgments affirmed. McMurray, P. J., concurs in Divisions 1, 2, and 3, and in the judgment. Sognier, J., concurs specially.*

SOGNIER, Judge, concurring specially.

I concur with all divisions of this opinion except Division 4 with which I concur in judgment only. Although I agree the trial court properly granted summary judgment in favor of Guernsey Petroleum Corporation on the claim for malicious abuse of process made by Data General, I do not agree with the majority that *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986) is applicable here. In response to interrogatories, Data General stated that it sought recovery only of damages for attorney fees and the cost of litigation on its malicious abuse of process claim. As noted by the Supreme Court in *Yost*, "[r]ecently enacted House Bill No. 1146, Ga. L. 1986, p. 1591 (to be known as OCGA § 9-15-14), provides for the award of attorney fees and expenses of litigation for specified abusive conduct. The new statute will, of course, govern these two elements of damages. That, however, in no way resolves the problems which we have outlined relative to other elements of recovery, specifically: special damages *other than* attorney fees and expenses of litigation . . . ." *Yost*, supra at 95 (9) and (10). Thus, *Yost* explicitly exempts from its purview the sole damages sought by Data General in its claim. *Yost* is therefore not applicable here and it is not necessary for us to address the possible retroactive effect of *Yost*.

Likewise, we need not here determine whether OCGA § 9-15-14, which became effective July 1, 1986, is retroactively applicable. Under the facts in this case as set forth in the majority, Data General failed to establish a claim to entitle it to attorney fees and expenses of litigation, and the trial court properly so ruled regardless whether that ruling is considered under the case law in effect prior to the effective date of OCGA § 9-15-14 or under the provisions of the statute which authorize the court (judge) to make such a determination. Accordingly, I concur with the majority's affirmance of the trial court's decision, but only on the basis outlined above.

DECIDED JULY 9, 1987 —
REHEARING DENIED JULY 24, 1987 —

*Stephen M. Forte*, for Guernsey Petroleum.
*Frank W. Virgin*, for Data General.