John R. WILLIAMS, and John B. Williams, Plaintiffs,

v.

DRESSER INDUSTRIES, INC., Defendant.

No. 1:92–CV–333–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 4, 1992.

Charles Wilson Dubose, Jennifer L. Wheatley Fletcher, Griffin, Cochrane & Marshall, Atlanta, Ga., for plaintiffs.

R. Peter Catlin, III, Bishop & Catlin, Brunswick, Ga., David J. Dempsey, Arlene Louise Coleman, Atlanta, Ga., Patrick G. Hatcher, Bye & Hatcher, Irvine, Cal., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This is a case alleging Defendant's fraudulent concealment and misrepresentation in connection with a franchise arrangement between Plaintiffs and Defendant. Diversity jurisdiction is vested with this Court pursuant to 28 U.S.C. § 1332.

The case is currently before the Court on Defendant's Motion to Dismiss, Defendant's Motion for Protective Order, and Defendant's Motion for Protective Order and to Quash Subpoena. The Court DENIES Defendant's Motion to Dismiss [2–1], DENIES as moot Defendant's Motion for Protective Order [15–1], and DENIES as moot Defendant's Motion for Protective Order and to Quash Subpoena [8–1].

## BACKGROUND

Plaintiffs John R. Williams and John B. Williams are residents of Georgia. Defendant Dresser Industries, Inc. ("Defendant", "Dresser") is a Delaware corporation maintaining its principal place of business in Dallas, Texas, and registered to do business in the State of Georgia. This case arises out of a franchise agreement between Plaintiffs and Defendant.

Defendant is a corporation involved in the manufacture of heavy construction equipment. At all relevant times, Defendant, through its distributors, sold construction equipment in the State of Georgia. Until January 28, 1988, Tri–State Tractor Company ("Tri–State"), under the ownership of R.E. Budd and its employees, held a franchise granted by Defendant pursuant to which Tri–State distributed Dresser equipment in Georgia.

On January 28, 1988, Plaintiffs purchased the assets of Tri–State for the approximate amount of two million, eighty thousand dollars ($2,080,000) and assumed liabilities in the approximate amount of twenty million dollars ($20,000,000). On that same day, January 28, 1988, Plaintiffs, as the new owners of Tri–State, entered into a new franchise agreement with Defendant to distribute Dresser equipment in Georgia. Pursuant to this new franchise agreement, Plaintiffs agreed to purchase a floor plan inventory of equipment, valued at more than ten million dollars ($10,000,-000).

Prior to the execution of the new franchise agreement between Plaintiffs and Defendant, on or about January 22, 1988, agents of Defendant met with Plaintiffs and their accountant to discuss Plaintiffs' imminent purchase of Tri–State. At that January 22 meeting, Defendant's agents and Plaintiffs negotiated the terms of the new franchise agreement and agreed that it would be executed contemporaneously with Plaintiffs' purchase of Tri–State, which in fact it was. At some point during the negotiations, Plaintiffs specifically indicated to Defendant that Plaintiffs desired to continue Tri–State's relationship with

Defendant substantially as it had been for the years previous and that, absent a commitment that the franchise relationship would continue unchanged, Plaintiffs would not purchase Tri–State.

On January 31, 1988, three days after Plaintiffs' purchase of Tri–State and their entering into the new franchise agreement with Defendant, Defendant announced its formation of a joint venture with Komatsu. Komatsu, formerly a competitor of Defendant's, sells construction equipment through its own dealerships located throughout Georgia. Komatsu is a much larger participent in the heavy equipment business than is Defendant.

Eventually, Plaintiffs on November 28, 1989 sold Tri–State to SMA–Stith Equipment Company, Inc. ("SMA–Stith"), the local Komatsu dealer. On January 13, 1992, Plaintiffs commenced the instant lawsuit in the Superior Court of Fulton County, Georgia. On February 12, 1992, Defendant removed the case to this Court on the basis of diversity jurisdiction. In their Complaint, Plaintiffs allege Defendant's fraudulent concealment and misrepresentation in connection with the new franchise agreement between Plaintiffs and Defendant. Specifically, Plaintiffs allege that at no time during either the January 22 negotiations between Defendant's agents and Plaintiffs, or the January 28 execution of the new franchise agreement between the parties—or indeed any time prior to the January 31 public announcement of the joint venture—did Defendant inform Plaintiffs of its intention to enter into a joint venture agreement with Komatsu. Thus, Plaintiffs contend that Defendant fraudulently concealed the fact of the impending joint venture between Defendant and Komatsu, in order to induce Plaintiffs to enter into the new franchise agreement with Defendant. Plaintiffs further contend that absent such concealment and misrepresentation by Defendant, Plaintiffs would not have entered into the new franchise agreement, neither would they have purchased Tri–State under the terms and for the price to which they agreed. Plaintiffs allege that as a result of the Dresser–Komatsu joint venture, Plaintiffs' customers became unwilling to purchase the Dresser equipment which Plaintiffs had purchased pursuant to the franchise agreement, and prior to the merger, due to the customers' fear that the Dresser equipment would become obsolete. Plaintiffs thus allege that as a result of Defendant's failure to disclose the fact of the joint venture, and Plaintiffs' subsequent entry into the purchase arrangement and franchise agreement in question, Plaintiffs have been damaged and have been caused to incur substantial losses in the subsequent sale of Tri–State to SMA–Stith.

Presently, Defendant has filed a Motion to Dismiss, as well as a Motion for Protective Order Staying Discovery and a Motion for Protective Order and to Quash Subpoena. The Court will address each Motion separately.

## DISCUSSION

### I. *Defendant's Motion to Dismiss*

#### A. Standard of Review for Dismissal

■ Defendant moves to dismiss Plaintiff's Complaint on the grounds that Plaintiff fails to state a claim. Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint which fails "to state a claim upon which relief can be granted." In consideration of a Rule 12(b)(6) motion, the court may look only at the pleadings, in this case the Complaint. *See* Rule 12(b). The Court construes the complaint broadly, accepting all facts pleaded therein as true and viewing all inferences in a light most favorable to the plaintiff. *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Thus, the court will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102.

## B. Application

In the instant case, Defendant contends that dismissal is appropriate on two separate grounds. First, Defendant argues that due to the absence of a fiduciary or confidential relationship between Defendant and Plaintiffs, Defendant owed no duty to Plaintiffs to disclose its confidential business plans to enter into a joint venture agreement with Komatsu. Second, Defendant argues that it may not be held liable for fraud in the instant case, since Plaintiffs allege Defendant's misrepresentation and concealment of a future event, rather than an existing or past fact, as is required of a claim of fraud under Georgia law. This Court, however, does not agree, and finds that dismissal of Plaintiffs' Complaint in the instant case is unwarranted.

Under Georgia law, there are five essential elements to the tort of fraud: (1) a false representation by the defendant; (2) made with scienter; (3) made with the intention of deceiving the plaintiff or of inducing the plaintiff to act or refrain from acting; (4) upon which representation the plaintiff reasonably relied; (5) with the proximate result that the plaintiff suffered damage. *City of Dodge v. Gardner*, 232 Ga. 766, 769–70 n. 1, 208 S.E.2d 794 (1974); *Guernsey Petroleum Corp. v. Data General Corp.*, 183 Ga.App. 790, 793, 359 S.E.2d 920 (1987); *Morrison v. Hayes*, 176 Ga.App. 128, 130, 335 S.E.2d 596 (1985); *Hardy v. Gordon*, 146 Ga.App. 656, 657, 247 S.E.2d 166 (1978); *Shaw v. Cook County Fed. Sav. & Loan*, 139 Ga.App. 419, 420, 228 S.E.2d 326 (1976). *See also, Grizzle v. Guarantee Ins. Co.*, 602 F.Supp. 465, 467 (N.D.Ga.1984) (O'Kelley, J.). Moreover, Georgia law imposes upon parties a duty to speak, and Georgia courts have consistently held that concealment of a material fact when one is under a duty to speak constitutes fraud. *See Reeves v. Williams & Co.*, 160 Ga. 15, 20–21, 127 S.E. 293 (1925); *Kieffer v. Linton*, 196 Ga.App. 327, 328, 396 S.E.2d 13 (1990); *Woodall v. Orkin Exterminating Co.*, 175 Ga.App. 83, 84, 332 S.E.2d 173 (1985). The Court in *Woodall* explained the approach under Georgia law as follows:

"Fraud is exceedingly subtle in its nature. There are infinite means by which it can be accomplished. In its conception human ingenuity is limitless in its capabilities. It is therefore impossible to state any general rule by which particular frauds are to be identified. Classification is almost, if not quite, impossible. It may be perpetrated by signs and tricks, and even silence may in some instances amount to fraud." [Cit.] "Concealment of material facts may amount to fraud ... where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover [cit.]; and misrepresentation may be perpetrated by acts as well as words and by artifices designed to mislead. [Cit.]"

175 Ga.App. at 84, 332 S.E.2d 173 (quoting *Wood v. Cincinnati Safe & Lock Co.*, 96 Ga. 120, 123–24, 22 S.E. 909 (1895); *Southern v. Floyd*, 89 Ga.App. 602(2), 80 S.E.2d 490 (1954); *Clark v. Aenchbacher*, 143 Ga. App. 282, 284, 238 S.E.2d 442 (1977)). *See also*, O.C.G.A. § 23–2–57 ("Fraud may not be presumed but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence.")

Thus, under Georgia law, silence where there is a duty to speak is the equivalent of an affirmative misrepresentation for the purposes of establishing fraud. *Reeves*, 160 Ga. at 20–21, 127 S.E. 293; *Perkins v. First Nat'l Bank of Atlanta*, 221 Ga. 82, 95, 143 S.E.2d 474 (1965); *Brown v. Brown*, 209 Ga. 620(6), 621, 75 S.E.2d 13 (1953) ("Where a person sustains towards others a relation of trust and confidence, his silence when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation."). *See also, Pinkerton and Laws Co. v. Roadway Express, Inc.*, 650 F.Supp. 1138, 1147 (N.D.Ga.1986) (Ward, J.) ("A claim for fraud may be founded on an allegation of nondisclosure of material information as well as affirmative misrepresentation provided the allegedly defrauding party was

obligated to disclose the suppressed information.") (citing O.C.G.A. § 23–2–53).

In addition, with regard to claims asserted under Georgia law, "[q]uestions of fraud, bad faith and materiality of misrepresentation are normally for the jury." *Grizzle*, 602 F.Supp. at 467 (citing *Preston v. Nat. Life and Accident Ins. Co.*, 196 Ga. 217, 237, 26 S.E.2d 439 (1943); *Adkins v. Lee*, 127 Ga.App. 261, 264, 193 S.E.2d 252 (1972)). Nevertheless, "where the evidence as a whole excludes every reasonable inference but one, the court may so rule as a matter of law." *Preston*, 196 Ga. at 237, 26 S.E.2d 439.

■ In moving for dismissal, Defendant does not dispute this interpretation of Georgia law regarding fraud. Rather, Defendant argues that due to the lack of a fiduciary or confidential relationship between Plaintiffs and Defendant, Defendant was under no duty to disclose its plans for the joint venture to Plaintiffs, as prospective franchisees. In so arguing, Defendant correctly states that the mere failure to disclose a fact, even if material, will not constitute fraud in the absence of a duty to make such disclosure. *Charter Medical Management Co. v. Ware Manor, Inc.*, 159 Ga.App. 378, 384, 283 S.E.2d 330 (1981). Defendant next proceeds, however, to discuss at length a decision from the Sixth Circuit Court of Appeals as well as one from the Seventh Circuit Court of Appeals, in which those Courts held that a franchisor owes no duty of disclosure to its franchisee concerning its future business plans. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss, pp. 5–9 (discussing, *inter alia*, *O'Neal v. Burger Chef Systems, Inc.*, 860 F.2d 1341 (6th Cir.1988); *Vaughn v. General Foods Corp.*, 797 F.2d 1403 (7th Cir.1986), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987)).

The Court finds, however, that Defendant's reliance upon these cases in support of its present argument is misplaced for two reasons. First, Defendant's argument is based upon the assumption that the relationship between Defendant and Plaintiffs, *at the time of the alleged misrepresenta-*

*tion*, was that of franchisor and franchisee. However, in the instant case, the parties were not, at the time of their negotiations, in any such relationship. Rather, they were in the more critical stage of negotiating *in order to form* such a franchisor-franchisee relationship. Thus, while the duty to disclose may be less great where the parties are already obligated under the terms of an *existing* franchise agreement, that duty must be distinguished from the one called for by the situation involving negotiations for the *entering into* of such an agreement.

Second, in both *O'Neal* and *Vaughn*, the Court's findings that a franchisor owes no duty of disclosure to its franchisee was expressly based upon those Courts' initial determinations that under the laws of Tennessee and Indiana, respectively, the duty to disclose could arise *only* in the context of a fiduciary or confidential relationship. Each Court then proceeded to the logical conclusion that *under those states' laws*, where no fiduciary or confidential relationship was found to exist, likewise no duty of disclosure could be found to exist so as to sustain a claim for fraudulent concealment.

■ Such is not the case, however, under Georgia law. Indeed, Defendant's entire argument on this point completely overlooks the plain position of Georgia law on this issue. Georgia law provides:

Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties *or from the particular circumstances of the case.*

O.C.G.A. § 23–2–53 (emphasis added). Pursuant to § 23–2–53, Georgia courts have consistently found a duty of disclosure to arise from a number of situations not involving strict fiduciary or confidential relationships. *See, e.g., Reeves*, cited *supra*, 160 Ga. at 21, 127 S.E. 293; *Hill v. Century 21 Max Stancil Realty*, 187 Ga. App. 754, 755, 371 S.E.2d 217 (1988) ("[O]ne may justifiably rely upon representations of even those who are not in fiduciary relationships with them. A fiduciary rela-

tionship is not an element of fraud but merely gives a special basis for reliance."). According to the Court in *Reeves,* cited *supra,*

> it would seem to be a sound rule to place within "the particular circumstances" referred to [by the predecessor to O.C.G.A. § 23–2–53] any case where a person intentionally concealed a fact from a certain other person, hoping thereby to derive a benefit, and knowing that only by silence and by concealing the truth would the anticipated benefit accrue.

160 Ga. at 21, 127 S.E. 293. This Court affirms the sentiment expressed by the Court in *Gellis v. B.L.I. Constr. Co.,* 148 Ga.App. 527, 251 S.E.2d 800 (1978) in stating that *"Reeves* is as sound and as just and as fair today as when the Supreme Court rendered the opinion in 1925." *Id.* at 538, 251 S.E.2d 800. Accordingly, this Court has specifically affirmed the Georgia courts' position on this issue. *See Thompson v. Smith Barney, Harris Upham & Co., Inc.,* 539 F.Supp. 859, 864 (1982) (Evans, J.), *aff'd,* 709 F.2d 1413 (11th Cir.1983). In *Thompson,* this Court held:

> [A]ctionable fraud may arise, even absent a fiduciary relationship, where there is active concealment of a latent defect or an intrinsic quality of the property being sold which is difficult for the purchaser to discover. Similarly, one who takes advantage of a party he knows to be laboring under a delusion may be liable for fraud, even absent a fiduciary relationship.

*Id.* (citing *Young v. Hirsch,* 187 Ga. 1, 9, 199 S.E. 179 (1938)).

Moreover, O.C.G.A. § 23–2–58 expressly defines confidential relations as follows:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

Accordingly, Georgia courts have consistently found that a confidential relationship, while not itself essential to the existence of a duty to disclose, may nevertheless arise from the circumstances of the parties' dealings, to be determined on a case by case basis. The Georgia Supreme Court has stated that "although some confidential relationships are created by law and contract (e.g., partners), others may be created by the facts of the particular case." *Cochran v. Murrah,* 235 Ga. 304, 306, 219 S.E.2d 421 (1975) (citations omitted). In *Cochran,* the Court specifically noted that "a confidential relationship may exist between businessmen, depending on the facts." *Id.* The Supreme Court, in discussing the predecessors to O.C.G.A. §§ 23–2–53 and 23–2–58, which were substantially identical to the current Code sections, then proceeded to adopt a statement made in a dissenting opinion in a Georgia Court of Appeals decision relating to Georgia's codification of common law confidential relationships:

> "[O.C.G.A. § 23–2–58] does not attempt to comprehensively enumerate the cases wherein the relation of mutual confidence is present.... The showing of a relationship *in fact* which justifies the reposing of confidence by one party in another is all the law requires. [O.C.G.A. § 23–2–53] expressly goes beyond the strict fiduciary relations of the parties and states that the obligation to communicate may arise 'from the particular circumstances of the case.' The same is true of [O.C.G.A. § 23–2–58]."

*Id.* at 307, 219 S.E.2d 421 (emphasis in original) (quoting *Cole v. Cates,* 113 Ga. App. 540, 546–47, 149 S.E.2d 165 (1966) (Felton, Nichols, Frankum and Jordan, JJ., dissenting)).

Thus, while Defendant correctly argues that " 'the basic elements of fraud do not vary significantly from state to state' ", Memorandum of Law in Support of Defen-

**1150**

dant's Motion to Dismiss, p. 10 (quoting *O'Neal,* cited *supra,* 860 F.2d at 1346), Plaintiffs correctly counter that the number and types of situations giving rise to the *duty of disclosure* necessary to a claim for fraud indeed do vary significantly. *See* Plaintiffs' Response and Opposition to Defendant's Motion to Dismiss, p. 13. Looking to the Georgia courts for direction, rather than those of Tennessee and Indiana, this Court finds that the duty to disclose under Georgia law may arise in a number of situations not involving a strict fiduciary or confidential relationship. *See, e.g., Wilhite v. Mays,* 239 Ga. 31, 32, 235 S.E.2d 532 (1977) (jury was authorized to find defendant/seller liable for fraudulent concealment of a condition of certain real property which plaintiff/purchaser would not have purchased if disclosed); *Woodall,* cited *supra,* 175 Ga.App. at 84–85, 332 S.E.2d 173 (whether homeowner was owed duty of full communication by exterminator presented fact question for jury); *Marshall v. York,* 165 Ga.App. 795, 798, 302 S.E.2d 711 (1983) (defendant's concealment of his intent not to pay for refinishing work allegedly done on certain furniture being removed from the refinisher's possession presented a jury question as to the existence of fraud); *Gellis,* cited *supra,* 148 Ga.App. at 537–38, 251 S.E.2d 800 (jury was authorized to find that, under the circumstances, construction lender had duty to disclose to contractor the fact that the lender was not holding the retainage, and was thus depleting the loan proceeds); *Hendrix v. Scarborough,* 131 Ga.App. 342, 344–45, 206 S.E.2d 42 (1974) (Hall, J.) (under the particular circumstances of the case, following the execution of a guaranty, lender owed duty to guarantor to disclose that other anticipated co-guarantors subsequently refused to execute such co-guaranties).

■ In the instant case, Defendant and Plaintiffs were negotiating the terms of a proposed franchise agreement. It is undisputed that throughout the negotiations pe-

riod, Defendant was aware of the facts that: (1) Plaintiffs were in the process of negotiating for the purchase of Tri–Star, with whom Defendant had for a number of years had a franchise relationship; (2) Plaintiffs' decision to purchase Tri–Star was in large part based upon the assumption that Plaintiffs' own proposed franchise relationship with Defendant would continue basically unchanged from that previously exercised by Defendant and Tri–Star; (3) Plaintiffs had specifically sought reassurances from Defendant that this would be the case, and had themselves taken a number of investigative steps to assure themselves of this fact; and (4) absent disclosure by Defendant, Plaintiffs had virtually no way of discovering for themselves the fact of the imminent joint venture agreement between Defendant and Komatsu. Moreover, as stated before, in considering a Motion to Dismiss, the Court draws all inferences in the plaintiff's favor. In the instant case, Plaintiffs and Defendant executed the new franchise agreement on January 28, 1988. On January 31, 1988, just three days later, Defendant publicly announced a major joint venture arrangement which it had entered into with Komatsu, its previous competitor. Given this situation, and drawing all inferences in Plaintiffs' favor, one would presume that in fact Defendant was fully aware of its intention to enter into the joint venture arrangement at the time of its January 28 execution of the new franchise agreement with Plaintiffs. To argue that Defendant had no such awareness of such a major business merger merely three days before its public announcement indeed borders on the absurd.

■ The Court accordingly finds that the instant case involves just the type of relationship anticipated by O.C.G.A. § 23–2–53. To allow Defendant to escape at such an early stage Plaintiffs' claims of fraud and misrepresentation on the sole basis of lack of a strict fiduciary or confidential relationship would run directly contrary to, and would defeat the purpose of, § 23–2–53 altogether. Although Defendant argues that that Code section is not applicable due to the fact that it anticipates only claims

for equitable relief, the Court does not agree. Under Georgia law, a party alleging fraud in the inducement to enter into a contract has an election of remedies, including rescission of the contract, as well as affirming the contract and proceeding against the other party for damages. *Wilhite,* cited *supra,* 239 Ga. at 31, 235 S.E.2d 532; *Guernsey,* cited *supra,* 183 Ga.App. at 791, 359 S.E.2d 920; *Price v. Mitchell,* 154 Ga.App. 523, 524, 268 S.E.2d 743 (1980). Defendant presents no argument why that general rule should not be applied to cases alleging fraud and arising out of relationships involving O.C.G.A. § 23-2-53.

■ As a second grounds for seeking dismissal, Defendant argues that the specific concealments and misrepresentations alleged by Plaintiffs in the instant case involve representations as to a future event, i.e., the joint venture agreement between Defendant and Komatsu, rather than existing or past facts, as is required by Georgia law. Defendant correctly argues that under Georgia law, fraud cannot be predicated upon statements which are promissory in nature as to future acts, but rather the representation made must have been made with respect to existing or past facts. *See Beach v. Fleming,* 214 Ga. 303, 306, 104 S.E.2d 427 (1958); *Guernsey,* cited *supra,* 183 Ga.App. at 793, 359 S.E.2d 920; *Gilreath v. Argo,* 135 Ga.App. 849, 851, 219 S.E.2d 461 (1975); *Warner v. Jeter,* 115 Ga.App. 6, 7, 153 S.E.2d 626 (1967); *Kennesaw Life & Accident Ins. Co. v. Flanigan,* 114 Ga.App. 510, 151 S.E.2d 881 (1966) (Hall, J.); *Cosby v. Asher,* 74 Ga.App. 884, 887, 41 S.E.2d 793 (1947). The Court in *Cosby,* faced with allegations regarding representations allegedly made to the plaintiff purchaser of property that a certain lease would in the future be transferred to the plaintiff, stated:

This is clearly a representation meant to take place in the future and did not misrepresent and had no relation to the misrepresentation of an existing fact or a past event,—an essential element of fraud. It is elementary that no one has a right to rely on a statement of another as to what could and would take place in the

future. The activities of life are too uncertain for anyone to depend on such representations. And the law recognizes no actionable right in the event one does rely on such uncertainties.

74 Ga.App. at 887, 41 S.E.2d 793. Indeed, as Defendant also correctly points out, this general rule has been extended specifically to the franchise context. *See American Food Services, Inc. v. Goldsmith,* 121 Ga. App. 686, 175 S.E.2d 57 (1970). *American Food Services* involved counterclaims by the defendant that the plaintiff fraudulently induced him to enter into a franchise arrangement by making material misrepresentations and failing to make certain material disclosures relative to the franchise. The Court, however, held that a franchise relationship is an arms-length business transaction, and that "representations to support a [fraud] claim must relate to an existing fact and not a future event, unless it be an event which the party making the representation knows will never occur." *Id.* at 688, 175 S.E.2d 57.

Nevertheless, as Plaintiffs correctly point out, the type of representations generally considered by the Georgia courts to be "future" are contingent or promissory in nature. *See Beach,* cited *supra,* 214 Ga. at 305-306, 104 S.E.2d 427 (promise to make plaintiff a joint owner of property not actionable as fraud); *Jackson v. Brown,* 209 Ga. 78, 79, 70 S.E.2d 756 (1952) (promise to reconvey property in the future not actionable as fraud); *Lively v. Garnick,* 160 Ga.App. 591, 595–96, 287 S.E.2d 553 (1981) (defendant/seller of house not liable for fraud by reason of having told purchaser that, after closing, the house would be built in accordance with specifications); *Clinton v. State Farm Mut. Auto. Ins. Co.,* 110 Ga.App. 417, 419, 138 S.E.2d 687 (1964) (representation that plaintiff would receive settlement compensation in the future not actionable as fraud).

■ In contrast to such promises and contingencies, Plaintiffs in the instant case allege that Defendant at the time of the parties' execution of the new franchise agreement concealed and misrepresented an existing, material fact—that is, its immi-

nent joint venture with Komatsu. The Court agrees with Plaintiffs that Defendant's alleged concealment "must be distinguished from concealment of indefinite future plans, such as a management decision to form a joint venture at some unknown time with some unknown party." Plaintiffs' Response and Opposition to Defendant's Motion to Dismiss, p. 19. As stated before, drawing all inferences in Plaintiffs' favor, it may be presumed that at the time of the January 28, 1988 execution of the new franchise agreement, Defendant was fully aware of its intention to enter into the joint venture agreement with Komatsu, and to publicly announce that joint venture a mere three days later.

Thus, the Court finds that in contrast to allegations that a party fraudulently misrepresented a *future* event of a *promissory or contingent* nature, Plaintiffs in the instant case allege that Defendant fraudulently concealed and misrepresented the *existing* fact of its *present* intention to enter into and publicly announce a major joint venture arrangement a mere three days later. Thus, the Court finds that dismissal of Plaintiffs' claims as not constituting actionable fraud is unwarranted in the instant case.

Therefore, the Court concludes that under Georgia law, Plaintiff need not allege a strict fiduciary or confidential relationship in order to sustain claims for fraudulent concealment and misrepresentation. In addition, the Court finds that Plaintiffs in the instant case allege Defendant's fraudulent concealment and misrepresentation of a present, existing fact rather than a mere contingent or promissory situation. As a result, the Court finds that dismissal of Plaintiffs' claims in the instant case is unwarranted.

II. *Defendant's Motion for Protective Order and Motion for Protective Order and to Quash Subpoena*

With regard to Defendant's additional Motions, the Court finds that they are at present moot. First, in its Motion for Protective Order Staying Discovery [15-1], Defendant requests that discovery in the instant case be stayed pending the Court's disposition of Defendant's Motion to Dismiss. That Motion having been decided, Defendant's Motion to Stay Discovery is now moot.

Second, Defendant on March 4, 1992 filed a Motion for Protective Order and to Quash Subpoena [8-1] with regard to a Subpoena Duces Tecum served by Plaintiffs on or about February 6, 1992. On March 27, 1992, however, Plaintiffs voluntarily withdrew the Subpoena Duces Tecum in question. As a result, Defendant's Motion is now moot.

### CONCLUSION

The Court DENIES Defendant's Motion to Dismiss [2-1]; DENIES as moot Defendant's Motion for Protective Order Staying Discovery [15-1]; and DENIES as moot Defendant's Motion for Protective Order and to Quash Subpoena [8-1].

So ORDERED.